**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| SERVICIOS MEDICOS PARA TODOS SA DE CV d/b/a HOSPITAL QUIRURGICA DEL SUR,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.,<br><br>Defendant. | ) | Case No. 5:25-cv-04094-KHV-ADM |

**MEMORANDUM SUPPORTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Blue Cross and Blue Shield of Kansas, Inc. ("BCBSKS") submits its memorandum supporting summary judgment, which establishes that BCBSKS is entitled to judgment as a matter of law.

Dated: August 21, 2026.

Respectfully Submitted,

SPENCER FANE LLP

*/s/ Olawale O. Akinmoladun*
Douglas M. Weems KS #14771
Olawale O. Akinmoladun KS #25151
1000 Walnut Street, Suite 1400
Kansas City, MO 64106-2140
Phone: (816) 474-8100
Fax: (816) 474-3216
dweems@spencerfane.com
wakinmoladun@spencerfane.com

Alexis H. Denny KS # 29752
6201 College Boulevard, Suite 500
Overland Park, KS 66211-2435
Phone: (913) 345-8100
Fax: (913) 345-0736
adenny@spencerfane.com
**ATTORNEYS FOR DEFENDANT**

**TABLE OF CONTENTS**


I. SUMMARY OF THE FACTS AND LAW SUPPORTING SUMMARY JUDGMENT IN BCBSKS'S FAVOR ..... 1

II. STATEMENT OF MATERIAL FACT ..... 3

A. The Parties ..... 3
B. The Plan ..... 3
i. Key definitions ..... 3
ii. Benefits are not assignable ..... 4
iii. Plan payments to Non-Contracting Providers and appeal rights ..... 5
C. Mrs. Rziha's Accident ..... 6
D. The Claims ..... 7
E. Benefit denial and appeals ..... 8

III. BCBSKS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE HOSPITAL QDS LACKS STANDING ..... 11

A. Legal Standard ..... 11
B. Hospital QDS Does Not Have Standing Against BCBSKS ..... 12
i. The Plan repeatedly prevents an assignment of rights to persons or entities other than the Insured. ..... 12
ii. Hospital QDS cannot rely on its assignment form because it is not valid under the Plan. 15
a. The Plan prevents assignment of rights and benefits ..... 15
b. The Plan's anti-assignment provisions are not ambiguous ..... 16
iii. BCBSKS's payments to Hospital QDS are appropriate. ..... 18

IV. BCBSKS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ITS DECISIONS WERE NOT ARBITRARY AND CAPRICIOUS ..... 19

A. Legal Standard is Arbitrary and Capricious ..... 19
B. Hospital QDS Cannot Meet Its Burden Because Its Damages Keep Changing. ..... 22
C. Hospital QDS Improperly Seeks All Charges ..... 23
D. BCBSKS's reasonably decided Hospital QDS's claims and appeals. ..... 24
E. BCBSKS Made Decisions In Good Faith. ..... 25
F. Attorney's Fees Are Inappropriate and Should Not Be Awarded to Hospital QDS ... 25
i. Hospital QDS cannot meet the test to warrant an award for fees. ..... 25
ii. Hospital QDS attempted to rely on an unreliable expert. ..... 26

V. CONCLUSION ..... 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamson v. UNUM Life Ins. Co. of Am.*,
455 F.3d 1209 (10th Cir. 2006) ....................23, 24

*Alessi v. Raybestos-Manhattan, Inc.*,
451 U.S. 504 (1981)....................22

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*,
890 F.3d 445 (3d Cir. 2018)....................12

*Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*,
No. CV174600FLWDEA, 2018 WL 1420496 (D.N.J. Mar. 22, 2018)....................11, 12, 18

*Be Well Providers, LLC v. Anthem Health Plans of Kentucky, Inc.*,
580 F. Supp. 3d 477 (W.D. Ky. 2022)....................13, 14

*Bedrick By & Through Humrickhouse v. Travelers Ins. Co.*,
93 F.3d 149 (4th Cir. 1996) ....................22

*Boyles v. Am. Heritage Life Ins. Co.*,
226 F. Supp. 3d 497 (W.D. Pa. 2016)....................19

*Cardoza v. United of Omaha Life Ins. Co.*,
708 F.3d 1196 (10th Cir. 2013) ....................19, 25

*Chastain v. AT & T*,
558 F.3d 1177 (10th Cir. 2009) ....................10

*Coil v. Rightchoice Managed Care, Inc.*,
No. 2:14-CV-04098-NKL, 2014 WL 4792934 (W.D. Mo. Sept. 25, 2014)....................17

*Crawford v. Guar. State Bank & Tr. Co.*,
No. 22-2542-JAR-GEB, 2024 WL 2700668 (D. Kan. May 24, 2024)....................19

*Denver Health & Hosp. Auth. v. Beverage Distributors Co., LLC*,
546 F. App'x 742 (10th Cir. 2013) ....................10, 11, 16

*Epstein v. UNUM Life Ins. Co.*,
No. CV 04-0400 SVW, 2004 WL 2418310 (C.D. Cal. Oct. 13, 2004) ....................25

*Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*,
663 F.3d 1124 (10th Cir. 2011) ....................20, 24

*Geddes v. United Staffing All. Emp. Med. Plan*,
469 F.3d 919 (10th Cir. 2006) ....................20

*Griffin v. Seven Corners, Inc.*,
No. 21-2332, 2021 WL 6102167 (7th Cir. Dec. 22, 2021)....................................11, 15

*Hall v. UNUM Life Ins. Co. of Am.*,
300 F.3d 1197 (10th Cir. 2002) ....................................................................19

*Hancock v. Metro. Life Ins. Co.*,
590 F.3d 1141 (10th Cir. 2009) ....................................................................23, 24

*Isner v. Minnesota Life Ins. Co.*,
677 F. Supp. 2d 950 (E.D. Mich. 2009)..........................................................22

*Lejeune v. Prudential Ins. Co. of Am.*,
No. CV 19-01270, 2021 WL 41659 (W.D. La. Jan. 4, 2021)..............................17

*LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*,
298 F.3d 348 (5th Cir. 2002) ........................................................................16

*Miller v. Monumental Life Ins. Co.*,
502 F.3d 1245 (10th Cir. 2007) ....................................................................16

*Nance v. Sun Life Assur. Co. of Canada*,
294 F.3d 1263 (10th Cir. 2002) ....................................................................20

*OSF Healthcare Sys. v. Bd. of Trs. of SEIU Healthcare Illinois Home Care & Child Care Fund*,
456 F. Supp. 3d 1018 (C.D. Ill. 2020) ...........................................................18

*OU Med., Inc. v. W.H. Braum Grp. Health Benefit Plan*,
No. CIV-21-67-J, 2021 WL 6101885 (W.D. Okla. May 4, 2021)..........................12, 13, 15

*Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*,
371 F.3d 1291 (11th Cir. 2004) ....................................................................16

*Scott v. Union Security Ins. Co.*,
2019 WL 451189, slip op. (D. Kan. Feb. 5, 2019) (Lungstrum, J.).......................20

*Shah v. Blue Cross Blue Shield of Ala.*,
No. 17-700, 2017 WL 4182043 (D.N.J. Sept. 21, 2017).....................................18

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*,
770 F.3d 1282 (9th Cir. 2014) ......................................................................17

*St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kansas, Inc.*,
49 F.3d 1460 (10th Cir. 1995) ......................................................................14

*Via Christi Regional Medical Center, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.*,
361 F. Supp. 2d 1280 (D. Kan. 2005)....15

*Ward v. Alternative Health Delivery Sys., Inc.*,
261 F.3d 624 (6th Cir. 2001)....18

*Weber v. GE Grp. Life Assur. Co.*,
541 F.3d 1002 (10th Cir. 2008)....19

*Weiner v. Blue Cross & Blue Shield of Louisiana*,
No. 3:17-CV-949-BN, 2018 WL 3956431 (N.D. Tex. Aug. 17, 2018)....11, 15

**Statutes**

29 U.S.C. § 1104(a)(1)(A)(ii)....22

29 U.S.C. § 1132(a)(1)....10

ERISA § 502(a)....16

ERISA § 502(a)(1)....10

ERISA § 502(g) (29 U.S.C. § 1132(g))....25

## I. SUMMARY OF THE FACTS AND LAW SUPPORTING SUMMARY JUDGMENT IN BCBSKS'S FAVOR

BCBSKS is entitled to summary judgment for two independent reasons. **First**, Hospital QDS lacks standing for its ERISA action.[1] Hospital QDS is a healthcare provider and, therefore, has no independent right to sue BCBSKS. Hospital QDS's only possible path to standing is through an assignment from a plan participant or beneficiary, but the Plan forecloses that path. Indeed, the Plan *repeatedly* states that an insured's benefits are personal and cannot be assigned to any person or entity under the Plan's General Information Section, and the Plan prohibits assignment of an insured's rights under state or federal law, including ERISA, within the Appeal Procedures Section. Hospital QDS has no valid assignment and, therefore, lacks derivative standing to pursue this action. The Court should grant BCBSKS summary judgment for this reason alone.

Hospital QDS's participation in the administrative appeal process does not change this result. The Plan permits a provider to pursue administrative appeals on an insured's behalf, but that procedural authority does not confer substantive ERISA rights or transform a provider into a plan participant or beneficiary. Hospital QDS exercised appeals rights under the Plan, but what Hospital QDS never obtained is an assignment of the right to litigate an ERISA benefits claim against BCBSKS.

**Second**, even assuming Hospital QDS has derivative standing, its ERISA claim fails on the merits because BCBSKS's benefit determinations were reasonable, supported by substantial evidence, and made in good faith. Hospital QDS seeks reimbursement for 100% of all billed charges, but the Plan does not allow BCBSKS to pay Hospital QDS, as a non-contracting provider, 100% of all services provided. Instead, the Plan grants BCBSKS with discretionary authority to

---

[1] The parties agree that the substantive issues in this case are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* Dkt. No. 68 at 2.

construe covered benefits under ERISA's deferential arbitrary and capricious standard. Under that standard, the question is not whether Hospital QDS believes it should have been paid more, or even whether another decision could have been reached. The question is whether BCBSKS's determination had a reasonable basis, was supported by substantial evidence in the administrative record, and was made in good faith.

There is no dispute that BCBSKS processed Hospital QDS's claims under the Plan's terms, paid the maximum allowable amounts it determined were owed, and repeatedly reviewed Hospital QDS's challenges through multiple appeal levels. Those reviews consistently confirmed that the claims had been processed correctly under the Plan based on Hospital QDS's non-contracting provider status, which required BCBSKS to pay the maximum allowable amounts under the Plan's cost-containment provisions. Hospital QDS's disagreement with the amount paid does not render those determinations arbitrary and capricious, and Hospital QDS cannot satisfy its difficult burden to establish arbitrary and capricious conduct. No such conduct occurred. The administrative record reflects precisely what a deferential ERISA review requires: a reasoned decision grounded in the Plan and supported by the information provided to BCBSKS.

Hospital QDS may now attempt to rely on the Plan, including through its recent withdrawal of a retained expert who had no knowledge of ERISA, never reviewed the Plan, formed opinions without knowing about this ERISA action, formed his opinions using AI tools and third-party sources, and relied on Mexican law and rates. Regardless, Hospital QDS did not rely on the Plan during the claims or appeals, and it cannot now rely on the Plan to defeat judgment in BCBSKS's favor.

BCBSKS is entitled to summary judgment.

## II. STATEMENT OF MATERIAL FACT

### A. The Parties

1. Servicios Medicos Para Todos Sa De CV d/b/a Hospital Quirurgica del Sur ("Hospital QDS") is a Mexican hospital facility that provided emergency and other services to Catarina Rziha ("Mrs. Rziha") under an employee welfare benefit plan within the meaning of ERISA. Dkt. No. 68, PTO Stip. 2.a.i, at 2; Amd. Comp. ¶ 4; BCBSKS Ans. ¶ 4.

2. BCBSKS is a Kansas corporation that is in the business of writing and selling health insurance in the State of Kansas. Dkt. No. 68, PTO Stip. 2.a.iii, at 2; Amd. Comp. ¶ 5; BCBSKS Ans. ¶ 5.

3. David and Catarina Rziha ("the Rzihas") are BCBSKS members and were insured under the Plan issued to Mid-Kansas Management, Inc., the employer for David Rziha ("Mr. Rziha"). Dkt. No. 68, PTO Stip. 2.a.iv, at 2.

### B. The Plan

#### i. Key definitions

4. The Plan is a Contract entered into between BCBSKS and Mid-Kansas Management, Inc., as the Contract Holder, for purposes of providing covered benefits to each Insured under the Plan. AR004, AR008, AR0012;[2] Dkt. No. 68, PTO Stip. 2.a.v, at 2.

5. The Rzihas were each an Insured under the Plan, as evidenced by Mr. Rzihas' BCBSKS Identification Card. Dkt. No. 68, PTO Stip. 2.a.v, at 2; AR012; AR119.

6. The Plan defines "You" and "Your" as the Insured, and provided Insureds with a 12-month Benefit Period effective January 1, 2022. AR015, AR018.

---

[2] The Administrative Record is filed with Court. *See* Dkt. Nos. 71-72.

7. The Company Service Area under the Plan is the State of Kansas except Johnson and Wyandotte Counties. AR008.

8. The Plan defines "Non-Contracting Provider" as an Eligible Provider who has not entered into a Contracting Provider Agreement with the Company, BCBSKS. AR008; AR013.

9. Eligible Provider includes acute care hospitals, such as Hospital QDS. AR008-9; Dkt. No. 68, PTO Stip. 2.a.i at 2.

**ii. Benefits are not assignable**

10. The Plan informs Insureds that benefits are personal to the Insured and cannot be assigned to any other person or entity when the Insured receives covered services from Non-Contracting Providers outside BCBSKS's Service Area. AR052 (General Information Section of the Plan).

11. Benefits are also personal to the Insured and cannot be assigned to any other person or entity where the Non-Contracting Provider is located within the State of Kansas (i.e., within BCBSKS's Service Area). AR051 (General Information Section of the Plan).

12. When an Insured receives services from a Non-Contracting Provider, BCBSKS must pay benefits directly to the Insured because the "benefits [are] personal to [the Insured] and [are] not assignable to any other person or entity." AR052 (General Information Section of the Plan).

13. The Plan allows payments directly to a Non-Contracting, instead of to the Insured, in limited circumstances, including where "the benefits are processed via the Blue Cross Blue Shield Global Core Program." AR052.

14. The Blue Cross Blue Shield Global Core Program ("Global Core") is referenced in the Plan as follows:

**General Information**

If You are outside the United States, You may be able to take advantage of the Blue Cross Blue Shield Global® Core Program when accessing covered healthcare services. The Blue Cross Blue Shield Global® Core Program is not served by a Host Blue. As such, when You receive care from providers outside the BlueCard service area, You will typically have to pay the providers and submit the claims yourself to obtain reimbursement for these services.

**Submitting a Blue Cross Blue Shield Global® Core Claim**

When You pay for covered healthcare services outside the BlueCard service area, You must submit a claim to obtain reimbursement. For institutional and professional claims, You should complete a Blue Cross Blue Shield Global® Core International claim form and send the claim form with the provider's itemized bill(s) to the Blue Cross Blue Shield Global® Core Service Center (the address is on the form) to initiate claims processing. Following the instructions on the claim form will help ensure timely processing of Your claim. The claim form is available from us, the Blue Cross Blue Shield Global® Core Service Center or online at www.bcbsglobalcore.com. If You need assistance with Your claim submission, You should call the Blue Cross Blue Shield Global® Core Service Center at 1-800-810-BLUE (2583) or call collect at 1-804-673-1177, 24 hours a day, seven days a week.

AR044.

15. The Plan defines "Host Blue" as "the local Blue Cross and/or Blue Shield Licensee in that other geographical area." AR043.

16. Global Core is a separate and independent entity and program from BCBSKS. Dkt. No. 68, PTO Stip. 2.a.v, at 2.

**iii. Plan payments to Non-Contracting Providers and appeal rights**

17. Non-Contracting Providers are generally paid allowable charges under the Plan by first applying any Deductible, Coinsurance, Copayment, shared payment, or benefit limits. AR041.

18. Non-Contracting Providers that provide Medical Emergency services are entitled to the actual charge for the service "up to the maximum amount allowable for the same service provided by providers that are Contracting Institutional Providers of the Company that are the same kinds of providers or Contracting Professional Providers of the Company with the same licensure or certification." AR041.

19. When an Insured receives services from a Non-Contracting Provider, the Insured "will be responsible for payment for services for which payment is not made by [BCBSKS] due

to a cost-containment policy or procedure applicable to a Contracting Provider of the same licensure providing the same service." *See id.*

20. Cost-Containment polices "include, but are not limited to, determinations by [BCBSKS] that the services provided are of such a nature that they should be considered one service with a single payment, or that the billing for service inappropriately categorized the nature of the services performed, in the opinion of [BCBSKS] and payment should be made for a different type or different intensity of service." *See id.*

21. The Plan provides its Insureds with appeal procedures applicable to Claim and Appeal determinations for Adverse Decisions to afford its "Insureds a full and fair review of Claim Decisions and Appeal decisions as a right under applicable federal and state law." AR048 (Appeal Procedures Section of the Plan).

22. The Plan states, however, that "an Insured's rights accrued hereunder or under applicable state or federal law (including but not limited to ERISA) are not assignable to any person or entity." *See id.* (emphasis added).

23. The Plan allows its Insureds to designate Authorized Representatives to represent the Insured for Appeals, and no written authorization is required if the Appeal is made on the Insured's behalf by a health care provider's urgent care treatment or services. *See id.*

**C. Mrs. Rziha's Accident**

24. On January 14, 2022, Mrs. Rziha was traveling in a golf cart as a co-pilot when she suffered a rear impact and was ejected from the cart, causing her to suffer contusions, a fractured pelvis, limited range of motion of the pelvis, shortening of her left leg, a laceration on her right arm, and various abrasions, nausea, crackles, and an intracranial injury with subsequent pain. Dkt. No. 68, PTO Stip. 2.a.vi, at 2.

25. When Mrs. Rziha arrived at Hospital QDS's facility on January 14, 2022, Mr. Rziha, as policy holder, signed several forms, including among others: (1) Blue Cross and Blue Shield International Claim Form; (2) Hospital QDS's Assignment of Benefits and Designation of Authorized Representative Agreement; and (3) Designation of Authorized Representative Forms. Mr. Rziha did not sign any BCBSKS forms. Dkt. No. 68, PTO Stip. 2.a.ix, at 2-3.

26. Mrs. Rziha received medical treatment for her injuries between January 14, 2022, and January 22, 2022. Dkt. No. 68, PTO Stip. 2.a.viii, at 2.

27. Mrs. Rziha was transferred by air ambulance to the airport after her condition stabilized to assist with transportation back to the United States. Dkt. No. 68, PTO Stip. 2.a.xi at 3.

**D. The Claims**

28. Hospital QDS submitted four claims through Global Core's claims department for services Hospital QDS provided to Mrs. Rziha between January 14, 2022, and January 22, 2022. AR043-44; AR0100-106; AR0109; Dkt. No. 68, PTO Stip. 2.a.viii, at 2; *See id.*, PTO Stip. 2.a.xiii, at 3.

29. Hospital QDS's first claim to Global Core totaled $2,650 and pertained to services Mrs. Rziha received on January 16. BCBSKS paid $658.12 for the claim and determined that $1,991.88 exceeded the allowed charge and was noncovered because Hospital QDS was a non-contracting provider. AR069; AR075.

30. Hospital QDS's second claim to Global Core totaled $42,579.91 and pertained to services Mrs. Rziha received between January 14 and January 20. BCBSKS paid $2,692.05 and determined that $39,887.86 was noncovered either because Hospital QDS was non-contracting, the units billed exceeded the maximum number of units allowable, reimbursement was part of a

global surgery or procedure payment, or the service is considered content of another service. AR0076-78; AR0084.

31. Hospital QDS's third claim to Global Core totaled $522 and pertained to a service Mrs. Rziha received on January 14. BCBSKS paid $295.38 for the claim and determined that $226.62 exceeded the allowed charge and was noncovered because Hospital QDS was a non-contracting provider. AR085; AR093.

32. Hospital QDS's fourth claim to Global Core totaled 86,971.50 for services Mrs. Rziha received on January 14 and January 16. BCBSKS responded by requesting that Hospital QDS provide an operation or surgical report before BCBSKS could process the claim. Almost a year later, BCBSKS received a reprocessed claim for $86,971.50 on July 10, 2023. BCBSKS paid $8,710.31 and determined that $78,261.19 exceeded the allowed charge and was noncovered because Hospital QDS was a non-contracting provider. AR0094; AR0415-416.

33. Hospital QDS's supplemental initial disclosures includes "estimated damages" totaling $119,985.05. Exhibit 2, Hospital QDS's Supplemental Disclosures at 3.

34. BCBSKS paid $81,700.00 for Mrs. Rziha's air ambulance services, which are not in dispute here. Dkt. No. 68, PTO Stip. 2.a.xii, at 3.

35. Air Ambulance is an Ancillary Provider under the Plan, and the allowable charge "is the amount the Ancillary Provider has agreed upon with the applicable Blue Cross and/or Blue Shield Licensee **as payment in full for covered services**, except [the Insured is] responsible for payment of any Deductible, Coinsurance or Copayment amounts." AR044 (emphasis added).

**E. Benefit denial and appeals**

36. Passage Health International ("PHI") is Hospital QDS's billing administrator. (Am. Comp. Ex. A); Dkt. No. 68, PTO at 11; fn. 3.

37. On October 26, 2023, PHI sent two letters to BCBSKS appealing multiple claims. AR419-429; AR436-446.

38. One letter appealed three claims totaling $86,971.50, $42,597.91, and $522 respectively, while the other letter appealed a single claim for $2,650. *See id.*

39. PHI's letters argue that Mrs. Rziha's "responsibility can only be limited to" her deductible, co-insurance, and her co-payment amount, if any. AR421; AR438.

40. Moreover, PHI's letters state what member contracts "generally" provide (AR420; AR437), but the letters fail to cite the Plan's specific language. *Compare*, AR420-421, *with* the Plan, generally AR001-68; *Compare,* AR0437-438, *with* the Plan, generally AR001-68.

41. BCBSKS responded on October 31, 2023, confirming that all claims were processed and paid correctly under the Plan. AR417; AR431.

42. On March 5, 2024, PHI sent two more letters to appeal the same claims and marked them "2nd Level Appeal." AR464-474; AR480-490.

43. PHI's letters argue that Mrs. Rziha's "responsibility can only be limited to" her deductible, co-insurance, and her co-payment amount, if any. AR466; AR482.

44. Moreover, PHI's letters state what member contracts "generally" provide (AR465; AR481), but the letters fail to cite the Plan's specific language. *Compare*, AR465-466, *with* the Plan, generally (AR001-68); *Compare,* AR481-482, *with* the Plan, generally (AR001-68).

45. On March 7 and 12, 2024, respectively, BCBSKS responded that it reviewed the appeals and confirmed that it processed the claims correctly. AR461; AR475-476.

46. On April 5, 2024, PHI sent its "3rd Level appeal" letters for the claims totaling $86,971.50, $42,597.91, and $522, respectively. AR510-521; AR558-570.

47. PHI's letters argued that Mrs. Rziha's "responsibility can only be limited to" her deductible, co-insurance, and her co-payment amount, if any. AR513; AR561.

48. Moreover, PHI's letters state what member contracts "generally" provide (AR512; AR560), but the letters fail to cite the Plan's specific language. *Compare*, AR512-513, *with* the Plan, generally (AR001-68); *Compare*, AR0560-561, *with* the Plan, generally (AR001-68).

49. On April 9, 2024, BCBSKS responded that it processed the claims correctly, and that due to Hospital QDS's non-participating status, the Plan's pricing guides apply. BCBSKS instructed that the amount over the allowed charge is the patient's responsibility. PHI submitted no new documentation for reconsideration, and BCBSKS upheld its decision. AR505-506; AR556-557.

50. On June 25, 2024, BCBSKS received another appeal on Mrs. Rziha's behalf. AR553.

BCBSKS communicated directly to Mrs. Rziha, stating:

> "We determined your appeal rights have expired. Your benefit description allows for an appeal of an adverse decision if received by BCBSKS within 180 days from receipt of the initial adverse decision. You may refer to the Appeal Procedures section of your benefit description for further details regarding the appeal process. Letter has been sent to member and faxed to authorized rep."

*See id.*

51. The Plan grants BCBSKS with full and exclusive authority to construe covered benefits, stating:

> To the extent that benefits of this Certificate are part of an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act (commonly known as ERISA), Blue Cross and Blue Shield of Kansas shall have the full and exclusive authority to construe covered benefits that are stated in the Certificate.

AR005.

## III. BCBSKS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE HOSPITAL QDS LACKS STANDING

### A. Legal Standard

ERISA allows plan participants or beneficiaries "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). "Thus, only plaintiffs who are properly considered 'participants' or 'beneficiaries' have standing to sue under ERISA § 502(a)(1)." *Chastain v. AT & T*, 558 F.3d 1177, 1181 (10th Cir. 2009).

"[H]ealthcare providers . . . generally are not considered beneficiaries or participants under ERISA and thus lack standing to sue" unless they have "a written assignment of claims from a patient with standing to sue under ERISA." *Denver Health & Hosp. Auth. v. Beverage Distributors Co., LLC*, 546 F. App'x 742, 745 (10th Cir. 2013) (citing *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1301–02 (11th Cir.2010). Healthcare providers obtain derivative standing through valid written assignments under a plan, and where the assignment is valid, such providers stand in the shoes of the participant or beneficiary. *See id; see also Griffin v. Seven Corners, Inc.*, No. 21-2332, 2021 WL 6102167, at *2 (7th Cir. Dec. 22, 2021) (affirming district court's grant of summary judgment to the insurer where the insured designated the provider to receive rights and benefits, but the provider did not have a valid assignment under the plan).

A provider lacks standing through its failure to demonstrate a valid assignment of benefits. *See Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.,* No. CV174600FLWDEA, 2018 WL 1420496, at *7 (D.N.J. Mar. 22, 2018) (recognizing that although the assignment of the insured's right to receive benefits under the plan to the providers would confer ERISA standing upon the providers, "because a valid anti-assignment provision exists, [the insured's] assignment to the [p]roviders is void, and the [p]roviders lack standing in this case.").

### B. Hospital QDS Does Not Have Standing Against BCBSKS

#### i. The Plan repeatedly prevents an assignment of rights to persons or entities other than the Insured.

The Plan includes several anti-assignment provisions that prevent Hospital QDS's attempt to seek the Rzihas' rights and benefits as an assignee. SOF, ¶¶ 10-12, 22. District and appellate courts dismiss lawsuits, or grant judgment in favor of the insurer, relying on only one anti-assignment provision.

In *Weiner v. Blue Cross & Blue Shield of Louisiana*, the provider treated the insurer's member under the insurer's plan, and at the time of treatment, the member completed the provider's assignment of benefits form. No. 3:17-CV-949-BN, 2018 WL 3956431, *1 (N.D. Tex. Aug. 17, 2018). The district court relied on one anti-assignment provision within the defendant's plan that prohibited the assignment of benefits to a third-party provider – the provision stated that "[t]he Member's rights and Benefits payable under this Benefit Plan are personal to the Member and may not be assigned in whole or in part by the Member." *Id.*

After the provider appealed the defendant's denial of claims and paid benefits, the provider filed suit against the insurer in state court, which the insurer removed to federal court. *Id*. at *1-2. The district court granted the insurer's summary judgment motion because the plan's anti-assignment clause barred the provider's assignment of benefits between the provider and the insurer's member. *Id*. at *4. The district court applied "universally recognized canons of contract interpretation to the plain wording of the . . . anti-assignment clause" to conclude that "any purported assignment of benefits from the [insurer's] members to [the provider] would be void." *Id*.

The Third Circuit in *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield* also relied on one anti-assignment clause that stated, "[t]he right of a Member to receive benefit

payments under this Program is personal to the Member and is not assignable in whole or in part to any person, Hospital, or other entity." 890 F.3d 445, 453 (3d Cir. 2018). *Am. Orthopedic* addressed the issue of anti-assignment clauses in ERISA contracts, stating: "[i]n thoughtful and reasoned decisions, every Circuit to have considered the arguments presented by [the provider] has rejected them, ultimately concluding that nothing in ERISA forecloses plan administrators from freely negotiating anti-assignment clauses, among other terms." 890 F.3d 445, 453 (3d Cir. 2018) (internal citations removed) (collecting cases). *Am. Orthopedic* ultimately affirmed the granting of the defendant insurer's motion to dismiss for lack of standing because the anti-assignment provision within the plan prevented the provider's ERISA-based action. *Id*.

*OU Med., Inc. v. W.H. Braum Grp. Health Benefit Plan,* No. CIV-21-67-J, 2021 WL 6101885, at *1 (W.D. Okla. May 4, 2021) is also instructive and relied on one anti-assignment provision to find that the provider lacked standing. 2021 WL 6101885, at *1-2 (W.D. Okla. May 4, 2021). In *OU Med*, the provider relied on its contract between the provider and beneficiary that appointed the provider as an "authorized representative to pursue any claims, penalties, and administrative and/or legal remedies on [the beneficiary's] behalf . . ." *Id*. The provider submitted two appeal claims to the defendant plan, which the defendant plan denied, and the provider subsequently filed suit against the defendant plan, "seeking payment of its claims and for breach of fiduciary duty under [ERISA]." *Id*. The defendant plan moved to dismiss the provider's claim because the plan, which afforded the provider appeal rights, "expressly prohibit[ed] assignment to [the provider] of the [beneficiaries'] right to judicial review of a benefits dispute under the [defendant plan]." *Id*. The district court rejected the provider's arguments that were based on the provider/beneficiary contract to, instead, rely on the "clear contractual [anti-assignment] language" to grant the defendant plan's motion to dismiss. *Id*. at *2.

The district court in *Be Well Providers, LLC v. Anthem Health Plans of Kentucky, Inc.*, granted the insurer's summary judgment relying on one anti-assignment provision that stated that the insured "cannot assign your right to receive payment to anyone else, except as required by a 'Qualified Medical Child Support order' as defined by ERISA or any applicable Federal law." 580 F. Supp. 3d 477, 482–83, fn. 7 (W.D. Ky. 2022). Be Well provided out-of-network health services to individuals insured by Anthem. *Id*. at 479. Anthem did not reimburse Be Well for those services. *Id*. So Be Well sued Anthem, asserting both primary and derivative (on behalf of the patients) claims based on several contract and tort theories. *Id*. Because ERISA covered the insurance plans of some patients, Anthem removed the case to federal court. *Id*.

The parties eventually filed cross-motions for summary judgment. The district court denied Be Well's motion, but granted in part Anthem's motion with respect to Be Well's claims related to the ERISA plan beneficiaries. *See id*. at 479, 491. The district court rejected Be Well's derivative claims, noting that the claims failed because valid anti-assignment provisions in the ERISA plans prohibited Be Well from asserting those claims on behalf of the beneficiaries. *Id*. at 482.

Here, the Plan includes several anti-assignment provisions that prevent the assignment of the Rzihas' rights and benefits to any other person or entity. SOF, ¶¶ 10-12; 22. The Plan's anti-assignment provision tied to state and federal claims, including ERISA claims, leaves no doubt, stating that "**an Insured's rights accrued** hereunder or **under applicable state or federal law (including but not limited to ERISA) are not assignable to any person or entity**." SOF, ¶ 22 (emphasis added). If this were the only anti-assignment provision within the Plan, federal case law throughout multiple Circuits support Hospital QDS's lack of standing against BCBSKS. But the Plan includes other anti-assignment provisions that bar Hospital QDS's ERISA claim against BCBSKS.

**ii. Hospital QDS cannot rely on its assignment form because it is not valid under the Plan**.

Hospital QDS's assignment form does not apply to BCBSKS, and Hospital QDS lacks standing to bring its ERISA action against BCBSKS. The foundational decision confirming that the assignability of an ERISA plan is left to the plan contract arose from the District of Kansas, which the Tenth Circuit affirmed. *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kansas, Inc*. affirmed the district court's decision stating "[w]e interpret ERISA as leaving the assignability of benefits to the free negotiations and agreement of the contracting parties." 49 F.3d 1460, 1464 (10th Cir. 1995) (refusing to allow state laws to mandate or forbid assignability, noting "[a]s Congress has chosen not to interfere with the parties' own freedom of contract on this matter, so must we insist that the states not interfere with the parties' freedom of choice" and dismissing all claims for policies covered by ERISA.).

While the District of Kansas has not directly addressed the same or similar anti-assignment language that existed in cases like *Griffin, Weiner*, *OU Med*, *Am. Orthopedic,* and *Be Well Providers,* the Court in *Via Christi Regional Medical Center, Inc. v. Blue Cross & Blue Shield of Kansas, Inc.* rejected the insurer's "no-assignment" arguments because the "clause only applie[d] to non-contracting providers." 361 F. Supp. 2d 1280, 1291-92 (D. Kan. 2005). *Via Christi* is inapplicable, here, because the Plan's anti-assignment language applies to "any person or entity," and makes no other distinction between contracting and non-contracting providers. SOF, ¶¶ 22-23.

**a. The Plan prevents assignment of rights and benefits**.

The Plan's anti-assignment language allows standing only for BCBSKS's Insureds to pursue state and federal claims, and specifically ERISA claims. The Plan gives Hospital QDS

appeal rights, which Hospital QDS repeatedly utilized three times without dispute from BCBSKS, but the Plan does not give Hospital QDS litigation rights. SOF, ¶¶ 21-23.

Hospital QDS's assignment form violates the Plan's anti-assignment provision and prevents Hospital QDS to pursue its ERISA claim against BCBSKS. The Plan is a contract between BCBSKS and the Group (of which the Rzihas are Insureds). SOF ¶ 4. Contract language controls and so, because the Plan unequivocally precludes assignments of any benefits to any person or entity whatsoever, including to Hospital QDS, the clause is valid and enforceable. *See, e.g., Weiner,* 2018 WL 3956431 at *4.

**b. The Plan's anti-assignment provisions are not ambiguous**.

Because the District of Kansas and the Tenth Circuit have clearly stated the assignability of an ERISA plan is left entirely up to the contracting parties, and since the Plan contains multiple anti-assignment provisions, Mr. Rziha could not assign his or his wife's benefits to Hospital QDS. SOF, ¶¶ 10-12; 22. The only avenue through which the assignment could be valid is if the anti-assignment provision was ambiguous. *See Denver Health & Hosp. Auth. v. Beverage Distributors Co., LLC*, 546 F. App'x 742, 746 (10th Cir. 2013) (declining to deny benefits based on the term "children" which the court determined in the was ambiguous as it was in the plan). Here, the anti-assignment language in the Plan is clear, unambiguous, and repeated multiple times throughout the contract.

The Tenth Circuit has established that ambiguity only exists "where a plan provision is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007). Determining whether a plan is ambiguous requires consideration of the "common and ordinary meaning as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words to mean." *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245,

1250 (10th Cir. 2007). Importantly, when "plan documents as a whole [are] unambiguous, [the court should] construe[ ] them as a matter of law." *Miller v. Monumental Life Ins. Co.*, 502 F.3d 1245, 1250 (10th Cir. 2007).

Insureds under the Plan do not, under any circumstances, have the right to assign *any* rights and benefits to *any* person or entity, through a provider's assignment of benefits form or otherwise, which includes the initiation of any cause of action against BCBSKS. SOF, ¶¶ 10-12; 22. This includes, but is not limited to, any right to file suit as such is afforded to plan participants or beneficiaries under ERISA § 502(a). *See Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1296 (11th Cir. 2004) (finding the single provision text "[e]xcept as applicable law may otherwise require, no amount payable at any time . . . shall be subject in any manner to alienation by . . . assignment . . . of any kind [ ]" was unambiguous, the assignment invalid and the plaintiff lacking standing to bring an ERISA action); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348 (5th Cir. 2002) (applying "universally recognized canons of contract interpretation to the plain wording" of a clause stating that "no attempted assignments of benefits will be recognized by the Plan "and concluding that "[b]ecause of the anti-assignment provision of the Plan, [provider] had no derivative standing to assert coverage retrospectively as [member's] assignee."); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282 (9th Cir. 2014) (holding provider lacked standing due to anti-assignment provision that stated "[y]ou may not assign your Benefits under the Plan to a non-Network provider without our consent. The Claims Administrator may, however, in their discretion, pay a non-Network provider directly for services rendered to you.").

In the instant case, the Plan contains an anti-assignment provision for state of federal law claims, and other anti-assignment provisions to the same effect, all of which are unambiguous. SOF, ¶¶ 10-12; 22. The Plan leaves no doubt that an Insured's claims are not assignable to contracting *and* non-contracting providers. AR051. The Plan includes no language that conceivably allows the assignment of an Insured's rights to another person or entity. The Plan's anti-assignment provision related to state and federal claims exists within the Plan's Appeal Procedure because the appeals section within ERISA plans often provide all administrative rights before litigation. *Lejeune v. Prudential Ins. Co. of Am.*, No. CV 19-01270, 2021 WL 41659, at *2 (W.D. La. Jan. 4, 2021) ("All ERISA plans are required to provide claims procedures and claims appeal procedures") (citing 29 U.S.C. § 1133); *Coil v. Rightchoice Managed Care, Inc.*, No. 2:14-CV-04098-NKL, 2014 WL 4792934, at *2 (W.D. Mo. Sept. 25, 2014) ("Every ERISA-governed plan must provide a benefits appeal procedure").

The Plan's anti-assignment provision for state and federal claims only allows BCBSKS's Insureds to litigate ERISA claims against BCBSKS in federal court. *Atl. Plastic & Hand Surgery*, 2018 WL 1420496, at *7 ("[B]ecause the [p]roviders are not beneficiaries or participants in the [p]lan, and because the anti-assignment provision invalidates [the [p]lan member's] purported assignment of benefits to the [p]roviders, the [p]roviders lack standing to pursue the ERISA claims."). Hospital QDS is a provider and, as such, is not a beneficiary or participant of the ERISA plan at issue here. SOF ¶¶ 1, 8-9. The Plan's repeated and clear language that Insured's cannot assign their rights and benefits to any other person or entity is unambiguous, and the Court should rely on the provisions to deny standing to Hospital QDS.

**iii. BCBSKS's payments to Hospital QDS are appropriate**.

The Plan requires BCBSKS to directly pay the Insured his or her benefits for services received from a non-contracting provider, but in limited circumstances, BCBSKS may pay benefits

directly to non-contracting providers where benefits are processed under the Global Core Program. SOF, ¶¶12-13. BCBSKS's direct payment to Hospital QDS neither creates standing, nor invalidates the anti-assignment provisions. *OSF Healthcare Sys. v. Bd. of Trs. of SEIU Healthcare Illinois Home Care & Child Care Fund*, 456 F. Supp. 3d 1018, 1029 (C.D. Ill. 2020) (granting motion to dismiss on the issue of standing because "direct payment alone is insufficient to confer beneficiary status on a medical provider"); *Ward v. Alternative Health Delivery Sys., Inc*., 261 F.3d 624, 627 (6th Cir. 2001) ("The fact that plaintiff may be entitled to payment from defendants as a result of her clients' participation in an employee plan does not make her a beneficiary for the purpose of ERISA standing."); *Shah v. Blue Cross Blue Shield of Ala*., No. 17-700, 2017 WL 4182043, at *3 (D.N.J. Sept. 21, 2017) (stating that "direct payment to a patient or healthcare provider does not constitute waiver where the plan at issue authorizes such payment.")). The Plan authorizes payment, so there is no waiver. SOF, ¶ 13.

The Plan and federal case law across multiple Circuits support Hospital QDS's lack of standing. If the Court agrees, then BCBSKS is entitled to judgment as a matter of law on Hospital QDS's ERISA claim, and there is no need for additional arguments. But, even if Hospital QDS survives judgment in BCBSKS's favor on the issue of standing, Hospital QDS cannot satisfy its burden that BCBSKS's decisions were arbitrary or capricious.

## IV. BCBSKS IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ITS DECISIONS WERE NOT ARBITRARY AND CAPRICIOUS

### A. Legal Standard is Arbitrary and Capricious

The Tenth Circuit and the District of Kansas have noted that "summary judgment in an ERISA case is 'merely a vehicle for deciding the case; the factual determination of eligibility for benefits is decided solely on the administrative record, and the nonmoving party is not entitled to the usual inferences in its favor.'" *Crawford v. Guar. State Bank & Tr. Co.*, No. 22-2542-JAR-

GEB, 2024 WL 2700668, at *1 (D. Kan. May 24, 2024) (*quoting Ian C. v. UnitedHealthcare Ins. Co*., 87 F.4th 1207, 1217 (10th Cir. 2023)).

Where an ERISA provider has retained authority to interpret a plan, '"in explicit terms, we employ a deferential standard of review,' asking only whether the denial of benefits was arbitrary and capricious." *Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008). "Under this standard, this court's 'review is limited to determining whether the interpretation of the plan was reasonable and made in good faith."' *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1201 (10th Cir. 2013).

Hospital QDS bears the burden of proving that the Plan's benefit determination was arbitrary and capricious based on the record considered at the time of the decision. *See Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002); *see also Boyles v. Am. Heritage Life Ins. Co*., 226 F. Supp. 3d 497, 502 (W.D. Pa. 2016) (recognizing that the burden is on insured to show that the denials of benefits were without reason, unsupported by substantial evidence or erroneous as a matter of law.)

In applying this deferential standard of review, a court cannot disturb an administrator's decision because it would reach a different conclusion; rather, the decision may only be reversed if the court finds that the decision lacked "any reasonable basis." *Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 929 (10th Cir. 2006).

The Tenth Circuit has described the arbitrary and capricious standard as follows:

> Using the arbitrary and capricious standard, we ask whether the administrator's decision was ***reasonable*** and ***made in good faith***. We will uphold the decision of the plan administrator as long as it is ***predicated on a reasonable basis***, and there is ***no requirement that the basis relied upon be the only logical one or even the superlative one***. We look for substantial evidence in the record to support the administrator's conclusion, meaning more than a scintilla of evidence that a reasonable mind could accept as sufficient to support a conclusion.

*Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1133-34 (10th Cir. 2011) (emphasis added) (internal citations omitted); *see also Scott v. Union Security Ins. Co.*, 2019 WL 451189, slip op. at *3 (D. Kan. Feb. 5, 2019) (Lungstrum, J.). The arbitrary and capricious standard "is a difficult one for a claimant to overcome" in the Tenth Circuit. *Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002).

If, despite the dispositive arguments above, the Court finds that Hospital QDS has standing to pursue its claims, it will fail on the merits as well. BCBSKS has full and exclusive authority to construe and interpret the Plan. SOF, ¶ 52. Hospital QDS, however, has relied on inconsistent and ever-changing demands to seek 100% of the outstanding hospital bill, and retained an unreliable expert, to try to game the system to pressure BCBSKS to pay an entire bill. The Court should not reward Hospital QDS's improper efforts.

**B. Hospital QDS Cannot Meet Its Burden Because Its Damages Keep Changing**.

Hospital QDS has changed its demand several times throughout this litigation. First, Hospital QDS submitted claims showing its services to Mrs. Rziha totaled $130,073.41 (AR100-106) and sought claimed damages totaling "$119,985.05." Dkt. No. 16, ¶¶20, 38. BCBSKS paid $12,355.86 on the claims. Dkt. No. 68, PTO Stip. 2.a.xiv, at 3. However, the alleged billed total of $130,073.41 minus BCBSKS's payment of $12,355.86 equals $117,717.55, which differs from $119,985.05.

The $117,717.55 total could have been the amount that Hospital QDS demanded from the Rzihas as debt collectors shortly before Hospital QDS filed its lawsuit against BCBSKS in Kansas State Court, had Hospital QDS credited the total amount BCBSKS paid. Dkt. No. 68, PTO Stip. 2.b.ii, at 3; Dkt. No. 1-1, at 11 of 12; Exhibit 3, July 18, 2025, Correspondence to the Rzihas. But Hospital QDS only credited BCBSKS for payments totaling $12,080.24, and demanded that the Rzihas pay $117,993.17 before Hospital QDS filed suit. *See id.* It seems odd that Hospital QDS, on one hand, would attempt to stand in the shoes of the Rzihas through derivative standing, but on the other hand, attempt to collect from them.

Regardless, Hospital QDS's supplemental initial disclosures includes "estimated damages" totaling $119,985.05, an increase from its claimed damages in July 2025. SOF, ¶¶ 33. But Hospital QDS increased its damages again through the Pretrial Order, seeking damages totaling $120,367.55 as the amount "Mrs. Rziha assigned to it". Dkt. No. 68, at 14. To add to the confusion, the report from Hospital QDS's withdrawn expert does not reference BCBSKS's payments and concludes that $97,555.06 is an amount that is "fair, commercially reasonable, and appropriately supported by the pricing evidence, medical documentation, and market benchmarks." Exhibit 4, Withdrawn Expert Report of Alberto Landero Lopez at 7.

And none of these figures consider the settlement amount that Hospital QDS received from the Rzihas resulting in the Rzihas' being dismissed with prejudice from this action before the Pretrial Order. Dkt. No. 65. Hospital QDS's claimed damages are a moving target. This ever-changing amount alone establishes that Hospital QDS cannot meet its burden of entitled damages.

**C. Hospital QDS Improperly Seeks All Charges**

Hospital QDS asserts that it is owed 100% of the charges for services to Mrs. Rziha, but even the most generous reading of the Plan language does not support this outcome. Hospital QDS ignores the Plan, and the admission from its billing administrator that insureds must generally pay certain costs, to argue that BCBSKS must pay the entire bill. SOF, ¶¶ 37-48.

Hospital QDS ignores that BCBSKS is only responsible for the maximum amount allowable while, at the same time, considering cost-containment policies. Cost-containment policies maintain plan health, which is an ERISA-sanctioned objective and a legitimate purpose of the Plan. *See* 29 U.S.C. § 1104(a)(1)(A)(ii); *Bedrick By & Through Humrickhouse v. Travelers Ins. Co.*, 93 F.3d 149, 154 (4th Cir. 1996) ("The fiduciary of an ERISA plan must act 'solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits . . . and defraying ***reasonable*** expenses."') (emphasis added). Congress carefully promulgated ERISA for the purpose of balancing the goal of benefiting employees with the goal of keeping the costs of private plans down to encourage private employers to offer benefit plans. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 514-515 (1981), citing H.R.Rep.No. 93-807, p. 69 (1974), 120 Cong. Rec. 29928 (1974), 3 Leg.Hist. 4732; *see also Isner v. Minnesota Life Ins. Co.*, 677 F. Supp. 2d 950, 957 (E.D. Mich. 2009) (recognizing that the method of cost containment is "consistent with ERISA's purpose").

The Plan's cost-containment policy requires that BCBSKS consider if the services provided should be considered one service with a single payment, or if billing for the service

inappropriately categorized the nature of the services such that payment should be adjusted for a different type or intensity of services. SOF, ¶¶ 19-20. The claim appeal responses noted that the claim processed correctly and that denial was due to various reasons including that Hospital QDS is a "non-contracting provider" or that the service was "part of a global surgery or procedure payment", it was "considered content of another service" or the "units billed exceed the maximum number of units allowable." SOF ¶ 30. BCBSKS paid at least $94,055.86 under the Plan. SOF, ¶¶ 32, 34. BCBSKS's payments represent the total amount it could while maintaining compliance with the Plan's cost-containment policy to protect the trust and Plan assets under ERISA.

### D. BCBSKS's reasonably decided Hospital QDS's claims and appeals.

In multiple levels of appeal conducted and reviewed by several individuals at escalating levels of authority, BCBSKS consistently concluded that the full allowable amount had been paid, and no more payment was owed. SOF, ¶¶ 36-51. These decisions articulated a reasonable interpretation of the Plan's terms, were predicated on information available to the reviewer at the time (including facts and arguments made by PHI on Hospital QDS's behalf and on other published information) and were made in good faith. Nothing more is required to sustain the Plan's decision.

The fact that Hospital QDS holds a different opinion about how much it should be paid is not evidence of an abuse of discretion. The arbitrary and capricious standard requires a reasonable decision, not a perfect one, or one with which the claimant agrees, or even one with which the court agrees. In applying the arbitrary and capricious standard of review, courts will uphold an administrator's decision "so long as it is predicated on a reasoned basis." *Adamson v. UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). Under this standard, there is no requirement that the basis relied upon be the only logical one, or the best possible one. *See Hancock v. Metro. Life Ins. Co.*, 590 F.3d 1141, 1155 (10th Cir. 2009). Rather, courts only ask whether the administrator's decision resides "somewhere on a continuum of reasonableness, even if on the low

end." *Adamson*, 455 F.3d at 1212 (quoting *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir.1999)). In other words, "[t]he decision will be upheld unless it is not grounded on any reasonable basis." *Hancock*, 590 F.3d at 1155 (quotation omitted).

### E. BCBSKS Made Decisions In Good Faith.

By its express terms, the Plan allows for payment to non-contracting providers that provide medical emergency services to be up to the maximum amount allowable for the same service provided to contracting institutional providers with the same licensure or certification. SOF ¶ 18. Therefore, BCBSKS, as the Plan's claims administrator, was obligated to evaluate whether the services provided to Mrs. Rhiza were charged at a rate compatible with BCBSKS's contracting providers. BCBSKS undertook this evaluation in good faith, considering the arguments made by Hospital QDS in the appeals. SOF ¶ 36-51. There is nothing in the administrative record to indicate that the Plan violated the "good faith" requirement of the arbitrary and capricious standard. *Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey*, 663 F.3d 1124, 1133-34 (10th Cir. 2011). Therefore, because BCBSKS's denials of the claim appeals were reasonable, supported by substantial evidence, and made in good faith, they were not arbitrary and capricious. Accordingly, BCBSKS's decisions must be upheld, entitling BCBSKS to summary judgment in its favor.

### F. Attorney's Fees Are Inappropriate and Should Not Be Awarded to Hospital QDS.

#### i. Hospital QDS cannot meet the test to warrant an award for fees.

BCBSKS's appeals denials were not arbitrary and capricious, and the Court should not consider Hospital QDS's request for attorneys' fees. *See* (Amd. Comp. Prayer at ¶ 3).

Fee awards under ERISA § 502(g) (29 U.S.C. § 1132(g)) are entirely discretionary. Under the five-factor test articulated by the Tenth Circuit in *Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1207 (10th Cir. 2013), fee shifting in this instance would be inappropriate, because

(i) there is no evidence that BCBSKS acted in bad faith; (ii) BCBSKS should not satisfy an award of fees; (iii) an award of fees would have no deterrent effect (because each claim must be evaluated on its own merits); (iv) Hospital QDS has filed this claim on its own behalf, and not on behalf of all Plan participants, and it has not sought to resolve a significant legal question regarding ERISA; and (v) BCBSKS's positions were justified. *Id*. If the Court determines that Hospital QDS has derivative standing and grants BCBSKS summary judgment in its favor, BCBSKS reserves the right to seek attorneys' fees. *See Epstein v. UNUM Life Ins. Co.*, No. CV 04-0400 SVW, 2004 WL 2418310, at *3 (C.D. Cal. Oct. 13, 2004) (granting defendants' motion for attorney's fees to "serve the purposes of ERISA by discouraging other litigants from relentlessly pursuing groundless claims.") (internal quotation omitted).

Attorneys' fees in BCBSKS's favor are appropriate. Hospital QDS should not have filed its lawsuit against BCBSKS under the terms of the Plan, and it has yet to establish its burden for the actual amount of claimed damages. Hospital QDS should be able to satisfy an award of fees because it utilizes a United States billing administrator. An award of fees is also appropriate to deter other non-contracting providers, within and outside the United States, from suing BCBSKS under similar circumstances. An award to BCBSKS is warranted because BCBSKS attempts to resolve a significant legal question regarding the extent that district courts will rely on the Plan's anti-assignment provisions within the Tenth Circuit. Moreover, Hospital QDS's claims and arguments lack merit.

**ii. Hospital QDS attempted to rely on an unreliable expert**.

Although Hospital QDS has withdrawn its expert, that does not change how the provider proceeded with this litigation and its purported damage claims. Hospital QDS disclosed its expert, Alberto Landero Lopez ("Lopez"), to opine on "the amounts charged by the Plaintiff for the treatment provided to Mrs. Rziha." Exhibit 5, Hospital QDS's Retained Expert Disclosure.

Lopez's expert report opined, in part, that it was "improper and inappropriate" for [BCBSKS] to reduce the claim "based on U.S. domestic fee schedules, CMS guidelines, DRG pricing, CPT coding requirements, or similar U.S.-standard benchmarks . . ." Ex. 4 at 2. Lopez opined that [BCBSKS] should have applied "the actual market pricing in the region where services were rendered." *Id.* Lopez further opined that [BCSBKS] derived its decision from a "fundamental misunderstanding – or disregard – of how medical pricing works in the Mexican healthcare market." *Id.* at 3.

After an unsuccessful discovery conference where BCBSKS addressed Hospital QDS's improper retention of Lopez in this ERISA action (Dkt. No. 54), BCBSKS noticed Lopez's deposition where he testified that:

- He knew nothing about ERISA ("I have no knowledge about ERISA, and I cannot answer your questions about that . . . not about ERISA at all.") Ex. 5, Lopez Dep. Tr., 29:18-21;
- He never reviewed the Plan (Q: "Is this the first time that you're looking at this group certificate?" / A: "Yes.") *Id.* at 25:5-10;
- His opinions have nothing to do with BCBSKS's Plan (Q: "Your opinions do not rely on Blue Kansas's comprehensive medical group certificate; correct?" / A: "Correct.") *Id.* at 33:5-19;
- He knew nothing about Hospital QDS's Amended Complaint, and saw it for the first time during his deposition. *Id.* at 23:3-18;
- He thought the insurer was Blue Cross and Blue Shield of Arkansas ("I was confused at the beginning. I thought it was Arkansas, and then I learned that it was Kansas, but my report was already sent.") *Id.* at 30:21-31:1;
- He used Claude artificial-intelligence software in connection with the report, testifying that he input "everything" into Claude and also included certain "considerations" from counsel. *Id*. at 20:20-22:4; and
- He does not know what changes a third party made to his report after he submitted it to Hospital QDS's counsel. *Id.* at 19:19-20:16.

Exhibit 6, Relevant Portions of Alberto Landero Lopez's July 25, 2026, Deposition Transcript. Hospital QDS's withdraw of Lopez does not change the undisputed, but now immaterial fact, that Hospital QDS retained an expert in federal litigation for purposes of claiming damages outside of the Plan. Hospital QDS's retention of Lopez was blatant attempt to go beyond the Plan and forced BCBSKS to expend thousands of dollars in fees and incur deposition costs – all for nothing. Hospital QDS's retention of its expert violates nearly every traditional understanding of discovery rules, and can be interpreted as an intentional frustration of this action.

If any award for fees and costs are due, it should be from Hospital QDS to BCBSKS.

## V. <u>CONCLUSION</u>

BCBSKS is entitled to summary judgment because Hospital QDS lacks standing to bring claims against BCBSKS and, even if Hospital QDS has standing, the decisions to deny Hospital QDS's appeals were reasonable, made in good faith, based on substantial evidence in the administrative record, and thus was not arbitrary and capricious.

WHEREFORE, defendant Blue Cross & Blue Shield of Kansas, Inc. prays that the Court grant summary judgment in its favor, and for such other and further relief as the Court deems appropriate and just under the circumstances.

Dated: August 21, 2026.

Respectfully Submitted,
SPENCER FANE LLP

*<u>/s/ Olawale O. Akinmoladun</u>*
Douglas M. Weems KS #14771
Olawale O. Akinmoladun KS #25151
1000 Walnut Street, Suite 1400
Kansas City, MO 64106-2140
Phone: (816) 474-8100
Fax: (816) 474-3216
dweems@spencerfane.com
wakinmoladun@spencerfane.com

AND

Alexis H. Denny KS # 29752
6201 College Boulevard, Suite 500
Overland Park, KS 66211-2435
Phone: (913) 345-8100
Fax: (913) 345-0736
adenny@spencerfane.com
**ATTORNEYS FOR DEFENDANT BCBSKS**

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 21st day of August, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service. I also certify that I emailed a Microsoft Word version of the foregoing to Plaintiff's counsel.

*/s/ Olawale O. Akinmoladun*
An Attorney for Defendant
Blue Cross and Blue Shield of Kansas, Inc.