**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| SERVICIOS MEDICOS PARA TODOS SA DE CV d/b/a HOSPITAL QUIRURGICA DEL SUR,<br><br>Plaintiff,<br><br>vs.<br><br>BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., et al.<br>Defendants | Nos. 5:25-cv-04094-KHV-ADM |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................................ 1

II. STANDARD OF REVIEW .......................................................................................... 4

III. RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ................. 5

IV. PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS ......................................... 11

V. ARGUMENT ................................................................................................................ 13

i. Hospital QDS Has a Written Assignment Sufficient to Confer Derivative Standing Under ERISA ……………………….…………………………...……………… 13

ii. The Complete Plan Does Not Cure the Ambiguity Previously Identified by the Court ………………………………………………………………………………….... 16

iii. BCBSKS Is Equitably Estopped From Enforcing the Anti-Assignment Provision…………………………………………………….………………….. 20

iv. BCBSKS Waived Enforcement of the Anti-Assignment Provision……………………………………………………………………….. 25

v. BCBSKS Has Not Established That Its Benefit Determinations Were Reasonable Under the Arbitrary And Capricious Standard………………………………….. 28

VI. CONCLUSION ............................................................................................................ 32

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ....................5

*Angelina Emergency Medicine Associates, P.A. v. Blue Cross & Blue Shield of Alabama*, 156 F.4th 505, 518-20 (5th Cir. 2025). ....................23

*Averhart v. U.S. West Mgmt. Pension Plan*, 46 F.3d 1480, 1486 (10th Cir. 1994). ....................21, 22

*Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981) ....................4

*Beverly Oaks Physicians Surgical Center, LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435 (9th Cir. 2020). ....................25, 26, 28

*Callery v. U.S. Life Ins. Co.*, 392 F.3d 401, 407-08 (10th Cir. 2004). ....................20

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2254, 91 L.Ed.2d 265 (1986). ....................4

*CSMN Operations LLC v. Aetna Life Ins. Co.,* No. 24-CV-00368-NYW-RTG, 2025 WL 2513588, at *4 (D. Colo. Sept. 2, 2025); ....................17

*Denver Health & Hosp. Auth. v. Beverage Distribs. Co., LLC*, 546 F. App'x 742, 745 (10th Cir. 2013) ....................14, 15, 17, 19

*D.K. v. United Behav. Healt*h, 67 F.4th 1224, 1236 (10th Cir. 2023). ....................29

*Eugene S. v. Horizon Blue Cross Blue Shield of N*.J., 663 F.3d 1124, 1133–34 (10th Cir. 2011) ....................29, 31, 32

*Finley v. Hewlett–Packard Co. Employee Benefits Org. Income Protection Plan*, 379 F.3d 1168, 1176 (10th Cir.2004). ....................30

*Flinders v. Workforce Stabilization Plan of Phillips Petrol. Co*., 491 F.3d 1180, 1193 (10th Cir. 2007) ....................29, 30, 31

*Hermann Hospital v. MEBA Medical & Benefits Plan* ....................22, 23, 24

*Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 962 (10th Cir. 2011). ....................21, 22

*Matter of Murphy's Estate*, 226 Kan. 424, 427, 601 P.2d 1096, 1099 (1979) ....................19

*Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). ....................4

*Mem'l Health Sys. v. Aetna Health, Inc*., 730 F. Supp. 2d 1289, 1294 (D. Colo. 2010). ..............14

*Phelan v. Wyo. Associated Builder*s, 574 F.3d 1250, 1256 (10th Cir. 2009). ...............................29

*Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc*., 770 F.3d 1282 (9th Cir. 2014) ..........................................................................................................25, 28

*St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc*., 49 F.3d 1460, 1464 (10th Cir. 1995) ..........................................................................................................15, 16, 19

*Tracy O. v. Anthem Blue Cross Life & Health In*s., 807 F. App'x 845, 854 (10th Cir. 2020) ......29

*Wood v. Hatcher*, 199 Kan. 238, 241, 428 P.2d 799 (1967)..................................................... 19

COMES NOW Plaintiff Servicios Medicos Para Todos SA de CV d/b/a Hospital Quirurgica del Sur ("Plaintiff" or "Hospital QDS"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 56, submits its Response in Opposition to Defendant Blue Cross and Blue Shield of Kansas, Inc.'s ("BCBSKS") Motion for Summary Judgment. For the reasons set forth herein, genuine disputes of material fact remain and BCBSKS is not entitled to judgment as a matter of law.

## I. Introduction

As this Court is aware, this case arises from emergency medical treatment that Plaintiff provided to Catarina Rziha following a serious accident in Mexico. Ms. Rziha was insured under an employee welfare benefit plan administered by Defendant Blue Cross and Blue Shield of Kansas, Inc. ("BCBSKS"). While Ms. Rziha was incapacitated, her husband, David Rziha, executed an assignment of benefits in favor of Hospital QDS. Hospital QDS thereafter submitted claims to BCBSKS for the treatment it provided. BCBSKS processed those claims, made payments directly to Hospital QDS, and permitted Hospital QDS to pursue multiple levels of administrative review concerning the amount of benefits paid. The dispute ultimately concerns whether BCBSKS properly paid the benefits due for that emergency treatment and, before reaching that question, whether BCBSKS may now rely upon provisions of the Plan to prevent Hospital QDS from enforcing the assignment through which it seeks those benefits.

BCBSKS seeks summary judgment on two independent grounds. First, it argues that Hospital QDS lacks derivative standing to pursue benefits under ERISA because the Plan contains anti-assignment provisions that purportedly rendered the Rzihas' assignment ineffective. Second, BCBSKS argues that even if Hospital QDS has standing, its benefits determinations must be upheld under the arbitrary and capricious standard because its calculation and payment of the

claims were reasonable and supported by substantial evidence. Neither argument warrants summary judgment.

BCBSKS's threshold standing argument begins from a premise that this Court has already rejected. On its prior Motion for Judgment on the Pleadings, BCBSKS argued that the Plan "unequivocally" prohibited the assignment at issue and therefore deprived Hospital QDS of derivative standing. The Court disagreed. After examining the language relied upon by BCBSKS, the Court found the anti-assignment provision ambiguous as to the very right at issue here. The Court explained that it was unclear whether the provision prohibited assignment of all rights under the Plan or merely rights associated with the Plan's appeal procedures; that the term "hereunder" was susceptible to more than one meaning; and that the provision's placement and wording could reasonably indicate that it applied only to the insured's right to administrative review. Most significantly, the Court observed that "[n]one of the stated definitions implicate the assignability of the right to sue for benefits, which is the right at issue here."

BCBSKS now attempts to overcome that ruling by placing the complete Plan before the Court and arguing that other provisions eliminate the ambiguity previously identified. Plainly, they do not.

Reading the Plan as a whole does not transform the language identified by the Court into an unambiguous prohibition against the particular assignment at issue. The additional provisions must instead be read together with the language, structure, and distinctions that caused the Court to find ambiguity in the first place. At minimum, BCBSKS has not established that the Plan permits only one reasonable interpretation concerning Hospital QDS's ability to pursue the assigned right to benefits. The Court previously declined to enforce the provision because the Plan language

before it was ambiguous. The complete Plan does not resolve the textual problems underlying that determination.

There is an additional and independent problem with BCBSKS's standing argument: its own conduct. BCBSKS knew that Hospital QDS was proceeding pursuant to an assignment, yet it processed the claims, paid Hospital QDS directly, entertained repeated appeals concerning the amount of benefits payable, and issued substantive determinations concerning those appeals without invoking the anti-assignment provision as a basis for refusing to deal with Hospital QDS. Indeed, BCBSKS previously conceded that the Plan gave Hospital QDS appeal rights that Hospital QDS "repeatedly utilized three times without dispute from BCBSKS." The record also reflects Hospital QDS's position that BCBSKS possessed the assignment throughout the claims and appeals process but did not invoke the anti-assignment provision during that process. Under these circumstances, BCBSKS cannot obtain summary judgment simply by pointing to the existence of anti-assignment language. Hospital QDS's waiver and equitable estoppel arguments must be considered in light of BCBSKS's entire course of conduct, not merely the fact that the Plan permitted certain direct payments through the Global Core program.

Nor does BCBSKS establish entitlement to judgment on the merits of Hospital QDS's claim for benefits. BCBSKS characterizes the dispute as one in which Hospital QDS simply demands payment of its full billed charges and asks the Court to substitute its judgment for that of the Plan administrator. That characterization obscures the actual issue: whether BCBSKS applied the Plan's reimbursement provisions reasonably and consistently with the governing Plan language when determining the amount payable for the emergency medical services at issue. BCBSKS paid only a fraction of the charges submitted by Hospital QDS and now relies upon its interpretation and application of the Plan's "Maximum Amount Allowable" and cost-containment provisions to

justify those determinations. The deferential standard invoked by BCBSKS does not eliminate the requirement that its benefits determination be grounded in the Plan and supported by the administrative record.

Accordingly, BCBSKS's Motion should be denied. As demonstrated below, first, the Plan does not eliminate the ambiguity this Court has already identified concerning assignment of the right to pursue benefits; second, the evidence concerning BCBSKS's knowledge of the assignment and its course of dealing with Hospital QDS independently precludes summary judgment under the doctrines of waiver and equitable estoppel and third, BCBSKS has not established as a matter of law that its calculation and payment of benefits withstands review under the governing ERISA standard. At minimum, the record presents issues that cannot be resolved in BCBSKS's favor on the present Motion.

## II. Standard of Review

In considering a motion for summary judgment, the court must examine all the evidence in a light most favorable to the nonmoving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). If the moving party does not bear the burden of proof, he must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2254, 91 L.Ed.2d 265 (1986).

This burden is met when the moving party identifies those portions of the record which demonstrate the absence of material fact. *Id*. at 323, 106 S.Ct. at 2552.

Once the moving party meets these requirements, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis added). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleading." *Id*. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250, 106 S.Ct. at 2511.

## III. Response to Statement of Undisputed Material Facts

Pursuant to D. Kan. Rule 56.1, Plaintiff responds to Defendant BCBSKS's Statement of Material Facts in the following correspondingly numbered paragraphs. Unless otherwise stated, any fact identified as undisputed is undisputed solely for purposes of resolution of the pending Motion for Summary Judgment.

1. Undisputed for purposes of summary judgment.
2. Undisputed for purposes of summary judgment.
3. Undisputed for purposes of summary judgment.
4. Undisputed for purposes of summary judgment.
5. Undisputed for purposes of summary judgment.
6. Undisputed for purposes of summary judgment.
7. Undisputed for purposes of summary judgment.
8. Undisputed for purposes of summary judgment.
9. Undisputed for purposes of summary judgment. Defendant acknowledges that the Plan's definition of an Eligible Provider includes acute care hospitals such as Hospital QDS.

10. Undisputed that AR052 contains the Plan language cited by Defendant. Plaintiff disputes Defendant's characterization of that language to the extent Defendant contends that it unambiguously prohibits assignment of the right to pursue an ERISA claim for benefits. As this Court previously held, the Plan language presented by BCBSKS was ambiguous as to the scope of the rights that could not be assigned, including whether the Plan prohibited assignment of the right to sue for benefits. [*See* Doc. 51 at 6-7].
11. Undisputed that AR051 contains the Plan language cited by Defendant. Plaintiff disputes Defendant's characterization of that provision to the extent Defendant contends that language addressing the assignment of "benefits" necessarily and unambiguously prohibits assignment of a cause of action or the right to sue for benefits under ERISA. [*See* Doc. 51 at 6-7].
12. Disputed as stated. AR052 contains the language quoted by Defendant concerning payment of benefits to an Insured, but Defendant's assertion that BCBSKS "must" pay benefits directly to the Insured is incomplete. As Defendant acknowledges in the immediately following paragraph, the same provision expressly permits BCBSKS to make payment directly to a Non-Contracting Provider in certain circumstances, including when benefits are processed through the Blue Cross Blue Shield Global Core Program. See AR052.
13. Undisputed that the Plan permits direct payment to a Non-Contracting Provider when benefits are processed through the Blue Cross Blue Shield Global Core Program.
14. Undisputed that AR044 contains the quoted Global Core provisions.
15. Undisputed for purposes of summary judgment.
16. Undisputed for purposes of summary judgment.

17. Undisputed that AR041 contains the cited language concerning allowable charges for Non-Contracting Providers.

18. Undisputed that AR041 contains the quoted language concerning the maximum amount allowable for emergency medical services rendered by Non-Contracting Providers. Plaintiff disputes any implication that BCBSKS properly applied that provision in calculating the benefits payable for Hospital QDS's services.

19. Undisputed that AR041 contains the quoted Plan language. Plaintiff disputes any implication that the provision establishes, as a factual matter, that BCBSKS properly applied a cost-containment policy or procedure to the claims at issue.

20. Undisputed that AR041 contains the cited description of cost-containment policies. Plaintiff disputes any characterization of this provision as establishing that BCBSKS properly applied such a policy or procedure to Hospital QDS's claims.

21. Undisputed that AR048 provides appeal procedures intended to afford Insureds a full and fair review of Claim and Appeal decisions under applicable federal and state law.

22. Undisputed that AR048 contains the language quoted by Defendant. Plaintiff disputes Defendant's interpretation of that language and specifically disputes that it unambiguously prohibits assignment of the right to sue for benefits under ERISA. This Court previously found the provision ambiguous as to "what rights are not assignable—all rights under the plan or appeal rights arising under the plan or ERISA," and further found the terms "hereunder" and "however" susceptible to competing interpretations. [*See* Doc. 51 at 6].

23. Undisputed that the Plan permits Insureds to designate Authorized Representatives for appeals and provides that written authorization is not required for certain urgent-care appeals made by healthcare providers. Plaintiff further notes that the Court previously

recognized that the Plan's definition of "Appeal" concerns review of an adverse decision submitted to BCBSKS, "not a court of law," and that the definitions before it did not resolve assignment of the right to sue for benefits. [*See* Doc. 51 at 6].

24. Undisputed for purposes of summary judgment.
25. Undisputed that Mr. Rziha executed the identified documents on January 14, 2022. Plaintiff further notes that the Assignment of Benefits and Designation of Authorized Representative Agreement expressly assigns Hospital QDS rights extending beyond the mere receipt of payment, including legal and administrative claims and the right to participate in judicial proceedings and bring suit with derivative standing. Defendant's statement acknowledges execution of the Assignment but does not address its substantive terms. [*See* Doc. 71 at AR114].
26. Undisputed for purposes of summary judgment.
27. Undisputed for purposes of summary judgment.
28. Undisputed that Hospital QDS submitted four claims through Global Core's claims department for services provided to Mrs. Rziha between January 14 and January 22, 2022.
29. Undisputed that Hospital QDS submitted the identified claim and that BCBSKS paid $658.12. Undisputed that BCBSKS characterized the remaining amount as exceeding the allowed charge and noncovered. Plaintiff disputes that BCBSKS properly calculated the allowable amount under the terms of the Plan.
30. Undisputed that Hospital QDS submitted the identified claim and that BCBSKS paid $2,692.05. Undisputed that BCBSKS gave the identified reasons for not paying the balance. Plaintiff disputes that BCBSKS properly calculated the benefits payable under the terms of the Plan.

31. Undisputed that Hospital QDS submitted the identified claim and that BCBSKS paid $295.38. Undisputed that BCBSKS characterized the remaining $226.62 as exceeding the allowed charge. Plaintiff disputes that BCBSKS properly calculated the allowable amount under the Plan.
32. Undisputed that Hospital QDS submitted the identified claim, that BCBSKS ultimately paid $8,710.31, and that BCBSKS characterized $78,261.19 as exceeding the allowed charge. Plaintiff disputes that BCBSKS properly calculated the allowable amount under the terms of the Plan.
33. Undisputed that Plaintiff's supplemental initial disclosures contained the identified estimated-damages figure. Plaintiff disputes any implication that this figure determines the amount of benefits payable under the Plan.
34. Undisputed for purposes of summary judgment.
35. Undisputed that AR044 contains the quoted Plan language concerning allowable charges for Air Ambulance services. The air-ambulance claim is not at issue in this action.
36. Undisputed for purposes of summary judgment.
37. Undisputed for purposes of summary judgment.
38. Undisputed for purposes of summary judgment.
39. Undisputed for purposes of summary judgment.
40. Undisputed for purposes of summary judgment.
41. Undisputed that BCBSKS responded on October 31, 2023 and represented that the claims had been processed and paid correctly under the Plan. Plaintiff disputes that the claims were correctly processed and paid.
42. Undisputed for purposes of summary judgment.

43. Undisputed that the second-level appeal letters contained the cited argument.

44. Undisputed that the letters used the term "generally" and did not cite specific AR page numbers from the Plan. Plaintiff disputes any implication that this fact rendered the appeals ineffective or establishes that BCBSKS correctly calculated the benefits payable.

45. Undisputed that BCBSKS responded to the second-level appeals and represented that it had reviewed the appeals and processed the claims correctly. Plaintiff disputes that the claims were, in fact, correctly processed.

46. Undisputed for purposes of summary judgment.

47. Undisputed that the third-level appeal letters contained the cited argument.

48. Undisputed that the letters used the term "generally" and did not cite specific AR page numbers from the Plan. Plaintiff disputes any implication that this establishes the reasonableness or correctness of BCBSKS's benefit determinations.

49. Undisputed that BCBSKS responded on April 9, 2024, stated that the claims had been processed correctly, applied pricing guidelines based upon Hospital QDS's non-participating status, and upheld its prior determination. Plaintiff disputes that BCBSKS's calculation and determination were correct or consistent with the terms of the Plan.

50. Undisputed for purposes of summary judgment

51. Undisputed that AR005 contains language granting BCBSKS authority to construe covered benefits under the Plan. Plaintiff disputes any implication that such discretionary authority permits BCBSKS to interpret or administer the Plan inconsistently with its terms or establishes that the benefit determinations at issue were reasonable as a matter of law

## IV. Plaintiff's Statement of Additional Facts

1. On January 14, 2022, Catarina Rziha received emergency medical treatment from Plaintiff Servicios Medicos Para Todos SA de CV d/b/a Hospital Quirurgica del Sur ("Hospital QDS") in Mexico. Ms. Rziha was insured under an employee welfare benefit plan administered by Defendant Blue Cross and Blue Shield of Kansas, Inc. ("BCBSKS"). [*See* Doc. 51 at 4].

2. At the time of Ms. Rziha's treatment, Hospital QDS verified her eligibility for benefits with BCBSKS, and a BCBSKS representative provided Hospital QDS with a case number. [*See* Doc. 51 at 4].

3. On January 14, 2022, David Rziha executed Hospital QDS's written Assignment of Benefits and Designation of Authorized Representative Agreement. BCBSKS acknowledges that Mr. Rziha executed the Assignment upon Ms. Rziha's arrival at Hospital QDS. The Assignment expressly assigns to Hospital QDS "any payment, right to payment, all medical benefits and/or insurance reimbursements" payable for Hospital QDS's treatment of Ms. Rziha, as well as "any legal or administration claim or cause of action" arising under an employee benefit plan and the right to pursue such claims. [*See* Doc. 71 at AR114].

4. The Assignment further authorizes Hospital QDS to obtain claim information, submit evidence, make factual and legal statements, pursue appeals, and "participate in any administrative and judicial action." It expressly provides that Hospital QDS "may bring suit" against an employee benefit plan, plan administrator, or insurance company with derivative standing and states that the Assignment is valid for "all administrative and judicial reviews" under ERISA or "… or applicable federal or state laws.". *Id.*

5. Hospital QDS submitted four claims through the Blue Cross Blue Shield Global Core claims department for services provided to Ms. Rziha. BCBSKS processed those claims and paid benefits on each claim. [*See* generally Doc. 74].

6. On October 26, 2023, Hospital QDS, through its billing administrator, appealed BCBSKS's benefit determinations. BCBSKS considered the appeals and responded that the claims had been processed and paid correctly under the Plan. [*See* Doc. 74; AR417, AR419-429, AR431, AR436-446].

7. Hospital QDS thereafter pursued second-level appeals in March 2024. BCBSKS reviewed those appeals and again confirmed that the claims had been processed correctly. [*See* Doc. 74; AR461, AR464-476, AR480-490].

8. Hospital QDS pursued third-level appeals in April 2024. BCBSKS again addressed the merits of Hospital QDS's reimbursement dispute and advised that, because Hospital QDS was a non-participating provider, the Plan's pricing guidelines applied and amounts exceeding the allowed charge were the patient's responsibility. [*See* Doc. 74; AR505-506, AR510-521, AR556-570].

9. BCBSKS has acknowledged that Hospital QDS utilized the Plan's appeal procedures three times without BCBSKS disputing Hospital QDS's ability to pursue those appeals. [*See* Doc. 74 at 15-16].

10. The Plan provides that benefits for services rendered by a Non-Contracting Provider are personal to the insured and are not assignable, while also expressly permitting direct payment to a Non-Contracting Provider when benefits are processed through the Blue Cross Blue Shield Global Core Program. See Plan, AR051-052.

11. The Plan's definition of "Authorized Representative" provides that, for non-urgent care, an insured may designate an Authorized Representative to act on the insured's behalf, while separately providing that a provider may pursue an appeal involving urgent care without written authorization from the insured. [See Doc. 71, AR045-048].

12. The Plan separately provides in its "Appeal Procedures" section that "an Insured's rights accrued hereunder or under applicable state or federal law (including but not limited to ERISA) are not assignable to any person or entity." In its May 26, 2026 Memorandum and Order, the Court found that provision ambiguous as to whether it prohibited assignment of all rights under the Plan or only appeal rights arising under the Plan or ERISA. [*See* Doc. 51 at 6-7].

## V. <u>Argument</u>

BCBSKS's Motion should be denied because Hospital QDS has standing to pursue its ERISA claims and the Plan's anti-assignment provision does not bar those claims. As discussed below, Hospital QDS possesses a valid written assignment sufficient to confer derivative standing; the complete Plan does not resolve the ambiguity previously identified by the Court; and BCBSKS's conduct precludes enforcement of the anti-assignment provision under the doctrines of equitable estoppel and waiver.

### i. <u>Hospital QDS Has a Written Assignment Sufficient to Confer Derivative Standing Under ERISA.</u>

BCBSKS correctly states the general rule that only a participant or beneficiary may bring an action for benefits under ERISA§502(a)(1)(B). However, that does not end the standing inquiry. Healthcare providers may obtain derivative standing to pursue ERISA benefits through a valid written assignment from a participant or beneficiary. See *Denver Health & Hosp. Auth. v. Beverage Distribs. Co., LLC*, 546 F. App'x 742, 745 (10th Cir. 2013) (recognizing that healthcare

providers generally lack standing "unless they have a written assignment of claims from a patient with standing to sue under ERISA"); *Mem'l Health Sys. v. Aetna Health, Inc.*, 730 F. Supp. 2d 1289, 1294 (D. Colo. 2010). This Court recognized that principle in its prior Order, explaining that "[a]bsent an enforceable assignment of rights," *Hospital QDS* would not be entitled to sue under ERISA.

There is no genuine dispute that the Rzihas executed a written assignment in favor of Hospital QDS. The Assignment expressly transfers to Hospital QDS "any payment, right to payment, all medical benefits and/or insurance reimbursements" payable for the medical treatment Hospital QDS provided to Ms. Rziha. It separately assigns "any legal or administration claim or cause of action" arising under a group health or employee benefit plan, including "any right to pursue those legal or administrative claims or cause of action."

The Assignment is particularly explicit concerning the right at issue here. It authorizes Hospital QDS to obtain information regarding the claim, submit evidence, make statements concerning fact and law, make requests and receive notices concerning appeals, and:

> **"participate in any administrative and judicial action and pursue claims or cause of action or right against any liable party, insurance company, employee benefit plan, health care benefit plan, or plan administrator."**

The Assignment goes further still. It expressly provides that Hospital QDS, as assignee and designated representative, "may bring suit" against an employee benefit plan, plan administrator, or insurance company with derivative standing. It further provides that the agreement is valid for "all administrative and judicial reviews" under ERISA unless revoked. Thus, this is not a case involving a mere authorization to receive payment or an assignment that is silent concerning litigation rights. The Rzihas expressly assigned Hospital QDS both the right to receive benefits and the right to pursue administrative and judicial remedies to recover those benefits.

BCBSKS's own conduct confirms that Hospital QDS was not a stranger to the claims process. Hospital QDS pursued multiple levels of administrative review, and BCBSKS considered and decided those appeals on their merits. BCBSKS has itself acknowledged that Hospital QDS "repeatedly utilized" the Plan's appeal rights "three times without dispute from BCBSKS." Rather than reject Hospital QDS's claims or appeals because it lacked authority to act for the Rzihas, BCBSKS repeatedly addressed whether the claims had been properly processed and whether the correct amount of benefits had been paid.

Accordingly, the threshold requirement for derivative standing, a written assignment from an ERISA participant or beneficiary, is satisfied. *Denver Health*, 546 F. App'x at 745. The Assignment expressly encompasses the precise right Hospital QDS asserts in this action. BCBSKS therefore cannot prevail merely by observing that Hospital QDS is itself a healthcare provider rather than a Plan participant or beneficiary.

The actual dispute is much much narrower: whether the Plan rendered the Rzihas' otherwise sufficient Assignment unenforceable. BCBSKS contends that it did because the Plan contains anti-assignment language. Hospital QDS does not dispute that an unambiguous and applicable anti-assignment provision may prevent a healthcare provider from obtaining derivative standing. See *St. Francis Reg'l Med. Ctr. v. Blue Cross & Blue Shield of Kan., Inc*., 49 F.3d 1460, 1464 (10th Cir. 1995) (ERISA leaves assignability of benefits to "the free negotiations and agreement of the contracting parties"); *Denver Health*, 546 F. App'x at 745. This Court likewise recognized that unambiguous anti-assignment provisions may be valid and enforceable.

However, that rule only assists BCBSKS if the Plan unambiguously prohibits the particular assignment at issue and BCBSKS is entitled to enforce that prohibition. Neither proposition is established as a matter of law here. First, as explained below, the complete Plan does not cure the

ambiguity this Court previously identified concerning assignment of the right to sue for benefits. Second, even if the Plan could otherwise be construed to prohibit the Assignment, BCBSKS's conduct in accepting Hospital QDS's claims, paying benefits, and permitting Hospital QDS to pursue repeated administrative appeals raises independent issues of waiver and equitable estoppel. BCBSKS therefore has not established that Hospital QDS lacks derivative standing as a matter of law.

ii. <u>The Complete Plan Does Not Cure the Ambiguity Previously Identified by the Court.</u>

BCBSKS again argues that Hospital QDS lacks derivative standing because the Plan prohibits the Rzihas from assigning their rights and benefits. BCBSKS now emphasizes that the complete Plan contains multiple anti-assignment provisions and contends that, when those provisions are read together, they unambiguously prohibit assignment of both benefits and the right to pursue an ERISA action. But the additional Plan language does not resolve the specific ambiguity this Court already identified. It instead confirms that the Plan uses materially different language when addressing assignment of benefits, payment to providers, and rights arising under the Appeal Procedures.

The governing principles are already set out in the Court's May 26, 2026 Memorandum and Order. In *St. Francis Regional Medical Center v. Blue Cross & Blue Shield of Kansas, Inc.*, the Tenth Circuit held that ERISA leaves the assignability of benefits to "the free negotiations and agreement of the contracting parties." 49 F.3d 1460, 1464 (10th Cir. 1995). The Court also recognized that unambiguous anti-assignment provisions may be valid and enforceable. See *CSMN Operations LLC v. Aetna Life Ins. Co.,* No. 24-CV-00368-NYW-RTG, 2025 WL 2513588, at *4 (D. Colo. Sept. 2, 2025); *Denver Health & Hosp. Auth. v. Beverage Distribs. Co., LLC*, 546 F.

App'x 742, 745 (10th Cir. 2013). Enforceability depends on what the Plan actually and unambiguously prohibits.

This Court has already examined the provision upon which BCBSKS principally relies to prohibit assignment of litigation rights. That provision appears in the Plan's "Appeal Procedures" section and states that "an Insured's rights accrued hereunder or under applicable state or federal law (including but not limited to ERISA) are not assignable to any person or entity." The Court found that language ambiguous in several respects.

First, it was unclear whether "rights" meant all rights under the Plan or only appeal rights arising under the Plan or ERISA. Second, "hereunder" could refer either to the rights described in the Appeal Procedures section or to rights arising under the Plan as a whole. Third, because the sentence begins with "however," it could reasonably be read as modifying the immediately preceding sentence concerning BCBSKS's obligation to afford insureds a full and fair review. Finally, the Plan defines an "Appeal" as review of an adverse decision submitted to BCBSKS, not review in a court of law. The Court therefore concluded that "[n]one of the stated definitions implicate the assignability of the right to sue for benefits, which is the right at issue here."

BCBSKS now attempts to overcome that ruling by relying on the complete Plan and arguing that other anti-assignment provisions eliminate the ambiguity. But those additional provisions address a different subject. In the General Information section, the Plan states that benefits payable for services rendered by Non-Contracting Providers are personal to the insured and are not assignable to another person or entity. The same section generally directs payment to the insured, while separately authorizing direct payment to a Non-Contracting Provider when claims are processed through the Global Core Program. [See Doc. 71 at AR051-052]. Those provisions speak in terms of benefits and payment. They do not expressly state that an insured may

not assign a cause of action, the right to enforce benefits, or the right to seek judicial review under ERISA.

That distinction matters. The Assignment executed by Mr. Rziha did more than direct BCBSKS to send payment to Hospital QDS. It separately assigned the right to payment and the right to pursue legal and administrative claims, expressly including the right to participate in judicial proceedings and bring suit with derivative standing. Thus, even assuming the General Information provisions unambiguously restrict assignment of the right to receive benefit payments, that does not necessarily answer whether the Plan separately and unambiguously prohibits assignment of the right to enforce those benefits in court. The latter question turns on the Appeal Procedures provision, and that is the very provision this Court found susceptible to more than one reasonable interpretation.

BCBSKS largely avoids that distinction by asserting that all of the Plan's anti-assignment provisions are "to the same effect." Its memorandum states that because the Plan contains several anti-assignment provisions, insureds "do not, under any circumstances, have the right to assign any rights and benefits," including the initiation of a cause of action. But that conclusion is broader than the text on which it relies. [Doc. 71 AR051-052] address assignment of benefits and the recipient of payment. AR048 addresses "rights accrued hereunder" in the Appeal Procedures section. Treating those provisions as interchangeable simply assumes away the ambiguity instead of resolving it.

Nor does BCBSKS cure the problem by explaining why the anti-assignment language appears in the Appeal Procedures section. BCBSKS argues that the provision appears there because ERISA plans must provide administrative claims and appeal procedures before litigation. But that functional explanation does not answer the textual questions the Court identified. It does

not explain why "hereunder" necessarily refers to the entire Plan rather than the Appeal Procedures section. It does not explain why "however" should not be read as modifying the immediately preceding sentence. And it does not explain why a provision embedded in administrative appeal procedures, whose defined term "Appeal" does not include litigation, necessarily prohibits assignment of the separate right to sue for benefits.

The Court's prior ruling also anticipated the present posture. The Court recognized that, under Kansas law, a contract must be considered as a whole when determining ambiguity. See *Matter of Murphy's Estate*, 226 Kan. 424, 427, 601 P.2d 1096, 1099 (1979), citing *Wood v. Hatcher*, 199 Kan. 238, 241, 428 P.2d 799 (1967). Because the complete Plan was not then before the Court, it declined to determine the issue as a matter of law. The complete Plan is now before the Court, but it does not eliminate the ambiguity. Reading the Plan as a whole reveals that BCBSKS used different language in different sections: one set of provisions governs assignment and payment of benefits to Non-Contracting Providers; another governs rights arising in the Appeal Procedures section. Nothing in the additional provisions states that the latter must be read to prohibit assignment of the right to bring an ERISA action.

At minimum, the complete Plan remains reasonably susceptible to the same competing interpretations identified in the Court's prior Order. One reasonable reading is BCBSKS's: that the Plan broadly prohibits assignment of all benefits and all rights, including litigation rights. But another reasonable reading is that [Doc. 71 AR051-052] prohibits assignment of the right to receive benefit payments, while AR048 governs only rights arising within the Plan's administrative appeal process. The existence of those competing reasonable interpretations is the definition of ambiguity and precludes summary judgment on BCBSKS's standing theory. See *Denver Health*, 546 F. App'x at 745; *St. Francis*, 49 F.3d at 1464.

Furthermore, BCBSKS's own position further demonstrates the ambiguity in the Plan. BCBSKS contends that it permitted Hospital QDS to pursue three levels of appeals because Hospital QDS was merely acting as the Rihas' Authorized Representative rather than as an assignee. Yet the Plan's Authorized Representative provision expressly addresses designation of a representative for non-urgent care, while separately permitting a provider to pursue an urgent-care appeal without written authorization. [*See* Doc. 71, AR045-048].

This case indisputably arose from emergency medical treatment. BCBSKS cannot simultaneously maintain that the Plan unambiguously distinguishes an assignee from an Authorized Representative and then rely upon a provision directed to non-urgent care to explain why it repeatedly recognized Hospital QDS's authority in an emergency care claim. Therefore, in the most charitable context, BCBSKS's own interpretation demonstrates that the relationship among the Plan's assignment, Authorized Representative, and appeal provisions is not as unambiguous as BCBSKS now contends.

Accordingly, BCBSKS has not established as a matter of law that the Plan unambiguously invalidates the Rzihas' assignment of the right Hospital QDS seeks to enforce here.

iii. <u>BCBSKS Is Equitably Estopped From Enforcing the Anti-Assignment Provision.</u>

BCBSKS is also not entitled to summary judgment because the record supports application of equitable estoppel to its belated invocation of the Plan's anti-assignment provisions. The Tenth Circuit has not formally adopted a general federal common-law equitable estoppel cause of action under ERISA, but it has repeatedly left open the availability of estoppel in at least two circumstances: (1) where the conduct is sufficiently egregious, and (2) where the alleged representation or conduct constitutes an interpretation of an ambiguous Plan provision. See *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 962 (10th Cir. 2011); *Callery v. U.S. Life Ins. Co.*, 392

F.3d 401, 407-08 (10th Cir. 2004); *Averhart v. U.S. West Mgmt. Pension Plan*, 46 F.3d 1480, 1486 (10th Cir. 1994).

Here, Plaintiff invokes federal equitable principles to prevent BCBSKS from relying upon an anti-assignment provision after BCBSKS treated Plaintiff as possessing authority to pursue the claims and administrative appeals for years, all while never invoking the purported prohibition on assignment. More importantly, this case falls within the precise circumstance the Tenth Circuit has repeatedly identified as potentially supporting ERISA estoppel, i.e., **the relevant Plan language is ambiguous**.

In *Averhart*, the Tenth Circuit recognized that courts permitting federal equitable estoppel in ERISA cases have generally done so where the terms of the plan are ambiguous and the plan administrator's communications amount to an interpretation of that ambiguity. 46 F.3d at 1486. The court rejected estoppel there because the plaintiffs could identify no ambiguous plan provision and therefore could not show that the employer's representations constituted an interpretation, rather than a modification, of the plan. *Id*. The Tenth Circuit later reiterated that distinction in *Kerber*, explaining that an ERISA estoppel theory may remain viable either in an egregious case involving lies, fraud, or an intent to deceive, or where the claim is premised upon the administrator's interpretation of an ambiguous Plan provision. 647 F.3d at 962.

This case is materially different from *Averhart* and *Kerber* because the required ambiguity is not merely alleged by Plaintiff. **This Court has already ruled on the ambiguity of the Plan.** In denying BCBSKS's Motion for Judgment on the Pleadings, the Court held that the anti-assignment language was ambiguous as to whether it prohibited assignment of all rights under the Plan or only rights associated with the Appeal Procedures. The Court found that the word "hereunder" could refer either to the Appeal Procedures section or to the Plan as a whole; that the

sentence beginning with "however" could reasonably be read as modifying only the preceding provision concerning administrative review; and that none of the definitions before the Court addressed assignment of the right to sue for benefits. The Court therefore expressly held that "the plan language before the Court is ambiguous."

BCBSKS's own conduct is consistent with Plaintiff's interpretation of that ambiguity. BCBSKS knew Hospital QDS was pursuing benefits based upon the Rzihas' assignment. Yet BCBSKS did not reject the claims on the ground that the assignment was ineffective. It processed the claims, calculated benefits, made payments arising from those claims, and allowed Hospital QDS to pursue multiple levels of administrative review. BCBSKS itself previously admitted that the Plan gave Hospital QDS appeal rights which it "repeatedly utilized three times without dispute from BCBSKS." Throughout that process, BCBSKS addressed the merits of the reimbursement dispute rather than telling Hospital QDS that the very assignment through which it was proceeding was prohibited.

The record therefore presents much more than a unilateral misunderstanding by Hospital QDS. BCBSKS's conduct over the course of claims administration objectively communicated that Hospital QDS had authority to invoke the Plan's claims and had appeal structure with respect to the Rzihas' benefits. That conduct is directly relevant to the meaning and enforceability of an anti-assignment provision that this Court has already held susceptible to competing interpretations. Under *Averhart* and *Kerber*, this is precisely the distinction between using estoppel impermissibly to modify unambiguous Plan language and using equitable principles in connection with an administrator's treatment of an ambiguous Plan provision.

Authority from other circuits addressing anti-assignment provisions further supports application of estoppel under these circumstances. In *Hermann Hospital v. MEBA Medical &*

*Benefits Plan*, the Fifth Circuit held that an ERISA plan was estopped from invoking an anti-assignment provision where the healthcare provider was not privy to the Plan, the administrator knew the provider was proceeding under an assignment, and the administrator nevertheless waited until litigation to invoke the clause. 959 F.2d 569, 574-75 (5th Cir. 1992). The court reasoned that because the provider had no opportunity to know about the clause, it was the plan's responsibility to raise the provision if it intended to rely upon it. *Id*.

The Fifth Circuit recently reaffirmed the significance of that principle in *Angelina Emergency Medicine Associates, P.A. v. Blue Cross & Blue Shield of Alabama*, 156 F.4th 505, 518-20 (5th Cir. 2025). There, the court distinguished traditional "ERISA estoppel," which often requires a material misrepresentation, detrimental reliance, and extraordinary circumstances, from the narrower equitable estoppel recognized in *Hermann* concerning belated enforcement of anti-assignment provisions against healthcare providers who were not parties to and did not possess the governing plans. The Fifth Circuit held that the district court erred by treating the two theories as identical. The reasoning in *Angelina Emergency* is persuasive because it addresses the precise problem presented in this case: an insurer's attempt to enforce an anti-assignment clause against a third-party provider only after dealing with that provider as the claimant throughout administration of the benefits dispute.

The facts here are at least sufficient to preclude summary judgment. Hospital QDS was not a contracting party to the Plan and had no reason during the claims process to know that BCBSKS would later contend that the Rzihas lacked authority to assign the right to benefits. BCBSKS, by contrast, drafted and administered the Plan and necessarily knew the provisions upon which it now relies. Hospital QDS presented claims pursuant to an assignment; BCBSKS processed those claims and made payments rather than asserting the assignment was prohibited; Hospital QDS challenged

the amount of those payments through multiple administrative appeals; BCBSKS entertained and decided those appeals on their merits; and BCBSKS never relied upon the anti-assignment provision as a basis to terminate that process. Hospital QDS's prior opposition identified precisely that factual sequence: BCBSKS made out-of-network payments, participated in the prolonged appeals process, possessed the assignment, and never cited an anti-assignment clause unknown to Hospital QDS.

BCBSKS should not be permitted to obtain the benefit of that course of dealing and then reverse positions once litigation commenced. Had BCBSKS timely advised Hospital QDS that it considered the assignment invalid, Hospital QDS and the Rzihas could have evaluated their rights and acted accordingly. Instead, BCBSKS permitted Hospital QDS to expend years pursuing the claim and exhausting the administrative process before relying upon a contractual provision that BCBSKS now says deprived Hospital QDS of the right to pursue the claim in the first place. That is the kind of inequitable "lie behind the log" conduct that Hermann refused to permit.

At minimum, these facts create a genuine dispute concerning whether BCBSKS's conduct precludes enforcement of the anti-assignment provision. Summary judgment is particularly inappropriate because the Tenth Circuit's principal objection to federal ERISA estoppel, the use of estoppel to contradict or modify unambiguous written Plan terms, is absent here. The Court has already determined that the operative provision is ambiguous, and BCBSKS's own administration of the claims provides evidence consistent with the narrower interpretation of that provision. Accordingly, BCBSKS has not established as a matter of law that it may invoke the anti-assignment provisions to defeat Hospital QDS's derivative standing.

iv. <u>BCBSKS Waived Enforcement of the Anti-Assignment Provision.</u>

Even if the Court concludes that the Plan otherwise prohibits the Rzihas' Assignment, BCBSKS is not entitled to summary judgment because the record supports a finding that BCBSKS waived its right to enforce that prohibition. BCBSKS did not merely make a payment to Hospital QDS. After receiving claims submitted pursuant to the Rzihas' written Assignment, BCBSKS processed the claims, made payments arising from those claims, permitted Hospital QDS to pursue multiple levels of administrative review, and repeatedly adjudicated the merits of Hospital QDS's reimbursement dispute without invoking the anti-assignment provision. Only after the administrative process concluded and litigation ensued did BCBSKS rely upon the anti-assignment provision to contend that Hospital QDS lacked authority to pursue the benefits assigned to it.

Although the Tenth Circuit has not squarely resolved the application of waiver to an anti-assignment provision under these circumstances, other federal courts recognize that an ERISA plan administrator may waive enforcement of such a provision through conduct inconsistent with an intent to enforce it. Most instructive is *Beverly Oaks Physicians Surgical Center, LLC v. Blue Cross & Blue Shield of Illinois*, 983 F.3d 435 (9th Cir. 2020). There, the Ninth Circuit held that a plan administrator may waive its right to enforce an anti-assignment provision when it knows or should know that a healthcare provider is pursuing benefits as an assignee but processes the claims without invoking the provision. *Id*. at 440-41.

*Beverly Oaks* applied the principle articulated in *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc*., 770 F.3d 1282 (9th Cir. 2014), that an administrator may not reserve a known or reasonably knowable basis for denying a claim and disclose that basis only after the claimant challenges the benefit determination in court. *Id*. at 1296-97. *Spinedex* itself found no waiver because the record contained no evidence that the administrator knew or should

have known during the administrative process that the provider was acting as an assignee rather than merely as an authorized representative. *Id*. at 1297. That distinction is important here.

In *Beverly Oaks*, the provider's claim form indicated that it was seeking benefits pursuant to a patient assignment, 983 F.3d at 438, 440-41. Blue Cross nevertheless processed the claims, denied or underpaid them, and did not invoke the anti-assignment provision during claims administration. *Id*. at 440-41. The Ninth Circuit held that those allegations supported waiver because Blue Cross knew or should have known that the provider claimed as an assignee, yet its "silence and payment" were inconsistent with an intent to enforce the anti-assignment provision. *Id*. The court therefore rejected the proposition that Blue Cross could hold the provision in reserve and invoke it for the first time when the provider sought judicial review.

The same reasoning applies with particular force here. This is not a case in which BCBSKS simply communicated with Hospital QDS without knowing the capacity in which Hospital QDS purported to act. Mr. Rziha executed an express Assignment of Benefits and Designation of Authorized Representative Agreement. That document did not merely direct payment to Hospital QDS. It expressly assigned "any payment, right to payment, all medical benefits and/or insurance reimbursements," as well as "any legal or administration claim or cause of action" arising under an employee benefit plan. The Assignment further expressly authorized Hospital QDS to participate in administrative and judicial proceedings and stated that Hospital QDS "may bring suit" against an employee benefit plan, plan administrator, or insurance company with derivative standing.

BCBSKS then processed Hospital QDS's claims rather than rejecting them based upon the Assignment. Hospital QDS submitted four claims through Global Core, and BCBSKS made payments on those claims while determining that substantial portions of the amounts billed

exceeded the allowable charges under the Plan. BCBSKS is therefore correct that direct payment, standing alone, does not necessarily establish waiver because the Plan permits direct payment to a Non-Contracting Provider when benefits are processed through Global Core. But Hospital QDS does not rely upon direct payment alone. Payment is one part of BCBSKS's broader course of conduct.

More significantly, BCBSKS continued to recognize Hospital QDS's authority throughout the administrative-review process. Hospital QDS appealed BCBSKS's benefit determinations in October 2023. BCBSKS considered those appeals and responded that the claims had been properly processed and paid under the Plan. Hospital QDS pursued second-level appeals in March 2024, and BCBSKS again reviewed the merits and maintained its benefit determinations. Hospital QDS then pursued third-level appeals in April 2024. Once again, BCBSKS addressed the merits, explaining that Hospital QDS's non-participating status subjected the claims to the Plan's pricing guidelines and that amounts exceeding the allowed charge were the patient's responsibility. At no point in those three rounds of administrative review did BCBSKS invoke the anti-assignment provision as a basis for refusing to recognize Hospital QDS's claimed rights.

BCBSKS's own conduct at the conclusion of the administrative process further demonstrates that it recognized Hospital QDS as acting on behalf of the insured. When BCBSKS received an additional appeal in June 2024, it informed Mrs. Rziha that her appeal rights had expired and expressly noted that its determination had been "faxed to authorized rep." BCBSKS has likewise acknowledged in this litigation that the Plan gave Hospital QDS appeal rights that it "repeatedly utilized three times without dispute from BCBSKS." Thus, BCBSKS's conduct was not an isolated payment or ministerial communication with an out-of-network provider. It was a sustained administrative relationship in which BCBSKS repeatedly accepted Hospital QDS's

invocation of rights arising from the Rzihas' claim and decided Hospital QDS's challenges on their merits.

That record presents precisely the concern addressed in *Beverly Oaks* and *Spinedex*. If BCBSKS knew or reasonably should have known that Hospital QDS was asserting rights pursuant to the Rzihas' Assignment, the anti-assignment provision was equally available to BCBSKS when it processed the claims and adjudicated Hospital QDS's appeals. An administrator should not be permitted to proceed through the administrative process on the merits while retaining a threshold anti-assignment objection for use only after the provider seeks judicial enforcement of the same benefits. See *Beverly Oaks*, 983 F.3d at 440-41; *Spinedex*, 770 F.3d at 1296-97.

At minimum, these circumstances preclude summary judgment on BCBSKS's standing defense. Whether BCBSKS possessed or otherwise had notice of the Assignment during claims administration, what BCBSKS understood concerning Hospital QDS's capacity, and whether its repeated processing of claims and appeals without invoking the anti-assignment provision was inconsistent with an intent to enforce that provision present factual issues that cannot be resolved in BCBSKS's favor on the present record.

Accordingly, even if the Court concludes that the Plan contains an otherwise applicable anti-assignment provision, BCBSKS has not established as a matter of law that it remained entitled to enforce that provision against Hospital QDS.

v. <u>BCBSKS Has Not Established That Its Benefit Determinations Were Reasonable Under The Arbitrary And Capricious Standard.</u>

BCBSKS argues that its benefit determinations must be upheld because the Plan grants it discretion to determine the maximum amount allowable and because cost containment is a legitimate objective of an ERISA plan. But discretionary authority does not eliminate meaningful

judicial review. Under the arbitrary and capricious standard, the question remains whether the administrator's decision was "reasonable and made in good faith." *Eugene S. v. Horizon Blue Cross Blue Shield of N*.J., 663 F.3d 1124, 1133–34 (10th Cir. 2011) (quoting *Phelan v. Wyo. Associated Builder*s, 574 F.3d 1250, 1256 (10th Cir. 2009)). Although a court will uphold an administrator's decision "so long as it is predicated on a reasoned basis," deferential review does not amount to no review at all. *Id*.

In determining whether a benefits decision is reasonable, the Tenth Circuit considers whether the decision: (1) "was the result of a reasoned and principled process," (2) "is consistent with any prior interpretations by the plan administrator," (3) "is reasonable in light of any external standards," and (4) "is consistent with the purposes of the plan." *Flinders v. Workforce Stabilization Plan of Phillips Petrol. Co*., 491 F.3d 1180, 1193 (10th Cir. 2007). An administrator likewise acts arbitrarily and capriciously when it fails to consistently apply the terms of the plan or adopts an interpretation inconsistent with the Plan's unambiguous language. *Tracy O. v. Anthem Blue Cross Life & Health In*s., 807 F. App'x 845, 854 (10th Cir. 2020); see also *D.K. v. United Behav. Healt*h, 67 F.4th 1224, 1236 (10th Cir. 2023).

Presently, the Plan itself supplies a solid benchmark against which BCBSKS's decision must be measured. For emergency services rendered by a Non-Contracting Provider, the Plan provides for the actual charge up to 80% "of the maximum amount allowable for the same service" provided by comparable Contracting Institutional Providers or Contracting Professional Providers with the same licensure or certification. [*See* Doc. 71, AR041]. Thus, the Plan does not simply state that BCBSKS may pay whatever amount it chooses. Its discretion is tethered to the amount allowable for the same service provided by comparable contracting providers.

The gross disparity between the charges submitted and the amounts BCBSKS allowed makes the reasoned basis for its determinations particularly important. As noted in BCBSKS's Statement of Facts in support of its Motion for Summary Judgment, Hospital QDS submitted four claims arising from Ms. Rziha's emergency treatment. On a $2,650 claim, BCBSKS paid $658.12. On a $42,579.91 claim, it paid $2,692.05. On a $522 claim, it paid $295.38. And on an $86,971.50 claim, it paid $8,710.31. BCBSKS ultimately paid $12,355.86 on Hospital QDS's claims.

BCBSKS's position appears to be that because it possessed discretion to determine the maximum amount allowable and because reducing costs is a permissible Plan objective, the resulting reimbursement amounts are necessarily reasonable. That reasoning proves too much. If accepted, virtually any reimbursement amount would survive review merely because BCBSKS labeled it the "maximum amount allowable." Under that theory, BCBSKS could reimburse ten cents on the dollar, or some still smaller fraction of an emergency medical bill, and the decision would necessarily be reasonable so long as BCBSKS invoked cost containment and its discretionary authority. That cannot be reconciled with *Flinders*, which requires consideration of whether the particular decision resulted from a "reasoned and principled process" and was reasonable in light of external standards. 491 F.3d at 1193; see also *Finley v. Hewlett–Packard Co. Employee Benefits Org. Income Protection Plan*, 379 F.3d 1168, 1176 (10th Cir.2004).

Nor is the fact that BCBSKS repeatedly reached the same conclusion during the administrative appeals sufficient by itself to establish reasonableness. In its MSJ briefing, BCBSKS emphasizes that several reviewers, at escalating levels of authority, concluded that the full allowable amount had been paid. Repetition of a conclusion, however, is not a substitute for a reasoned basis for that conclusion. The relevant inquiry is how BCBSKS determined the allowable

amount and whether that methodology bears a reasonable relationship to the standard prescribed by the Plan.

Additionally, BCBSKS itself characterizes its obligation as determining whether Hospital QDS's charges were "compatible with BCBSKS's contracting providers." That raises an important question: What comparable providers, rates, data, or methodology support the amounts BCBSKS selected? The Plan's language requires a comparison to the maximum amount allowable for the same services furnished by providers of the same kind or with the same licensure or certification. [*See* Doc. 71, AR041]. Merely stating that a charge exceeded the allowed amount does not demonstrate that the allowed amount itself was calculated through a reasoned application of that contractual standard.

BCBSKS's reliance on cost containment does not change the analysis. Hospital QDS does not dispute that controlling Plan expenses can be a legitimate objective. BCBSKS itself cites ERISA's recognition of both providing benefits and defraying reasonable expenses. But cost containment is an objective, not an independent grant of authority to disregard the Plan's reimbursement methodology. ERISA requires the administrator to administer the Plan according to its terms, and *Flinders* specifically asks whether the decision is consistent with the purposes of the Plan. 491 F.3d at 1193. A plan established to provide emergency medical benefits cannot reasonably be construed as permitting an administrator to select any reimbursement figure it wishes simply because a lower payment conserves Plan assets.

In sum, BCBSKS's argument substitutes the existence of discretion for the required examination of how that discretion was exercised. The arbitrary and capricious standard is deferential, but it still requires a decision grounded in a reasoned and principled process and reasonably connected to the terms of the Plan. *Flinders*, 491 F.3d at 1193; *Eugene S.*, 663 F.3d at

1133-34. BCBSKS has not established merely by invoking "maximum amount allowable," discretionary authority, and cost containment that the amounts it selected resulted from such a process.

Accordingly, BCBSKS has not demonstrated that its benefit determinations must be upheld as a matter of law.

## VI. Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant BCBSKS's Motion for Summary Judgment. Genuine disputes of material fact remain concerning Plaintiff's derivative standing and BCBSKS's waiver and estoppel of the Plan's anti-assignment provisions, and BCBSKS has not established that its benefit determinations were reasonable as a matter of law.

Respectfully submitted,

LITCHFIELD CAVO LLP

By: *<u>/s/ Matthew A. Tate</u>*
Matthew A. Tate MO #67463
10401 Holmes Road, Suite 220
Kansas City, MO 64131
(816) 648-1400
(816) 648-1401 Fax
tate@litchfieldcavo.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 11, 2026, this document was filed using the Court's CM/ECF system, which will send notice of the filing to all parties of record.

By: *<u>/s/ Matthew A. Tate</u>*
Counsel for Plaintiff