**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| SERVICIOS MEDICOS PARA TODOS SA DE CV d/b/a HOSPITAL QUIRURGICA DEL SUR,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.,<br><br>Defendant. | ) | Case No. 5:25-cv-04094-KHV-ADM |

**REPLY MEMORANDUM SUPPORTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Blue Cross and Blue Shield of Kansas, Inc. ("BCBSKS"), by and through counsel, states the following in support of its reply in further support of summary judgment:

## I. INTRODUCTION

BCBSKS remains entitled to summary judgment because the undisputed facts establish that Hospital QDS lacks standing to pursue its ERISA claim. Hospital QDS admits that the Plan: (1) provides that rights and benefits are personal to BCBSKS's insureds and cannot be assigned to another person or entity; (2) expressly prohibits assignment of rights arising under ERISA; and (3) allows Hospital QDS to act only as an authorized representative for purposes of the administrative appeal process. The Plan, when read as a whole, does not expressly or implicitly create even the appearance that assignability is possible, let alone probable. BCBSKS is entitled to summary judgment for this reason alone.

Even if Hospital QDS has standing, the undisputed facts support judgment for BCBSKS under the arbitrary and capricious standard. BCBSKS processed Hospital QDS's claims under the Plan's provisions governing non-contracting providers, paid the amounts BCBSKS determined

were allowable, explained the basis for those determinations, and repeatedly reviewed and upheld those determinations through separate appeal levels. BCBSKS is entitled to summary judgment because no genuine dispute of material fact prevents judgment in its favor.

## II. STATEMENT OF FACTS

### A. BCBSKS Objects to Hospital QDS's Unsupported Responses to BCBSKS's Statement of Facts.

Hospital QDS's responses to BCBSKS's statements of undisputed material facts ("SOF") paragraphs 10, 18-20, 29-33, 41, 44-45, 48-49, and 51 all purport to either deny or contradict BCBSKS's facts, but Hospital QDS did not include supporting citations. *See* D. Kan. Rule 56.1 (stating that disputed facts must "refer with particularity to those portions of the record upon which the opposing party relies").

"[M]erely placing evidence in the record on summary judgment without pointing the Court to [the record citation] is insufficient" *Ney v. City of Hoisington, Kan.*, 508 F. Supp. 2d 877, 883 (D. Kan. 2007), aff'd sub nom. *Ney v. City of Hoisington, Kansas*, 264 F. App'x 678 (10th Cir. 2008). "[I]t is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record." *Id*. (quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir.1978)). District courts admit facts where the opposing party controverts facts without record citations. *Id.* (stating that "[i]n line with D. Kan. R. 56.1, the Court will deem admitted for the purpose of summary judgment all facts that are not controverted by a readily identifiable portion of the record."). The Court should admit BCBSKS's SOF paragraphs 10, 18-20, 29-33, 41, 44-45, 48-49, and 51 because Hospital QDS did not properly respond to those paragraphs.

BCBSKS also disputes Hospital QDS's reference to the Court's Memorandum and Order overruling BCBSKS's Motion for Judgment on the Pleadings within SOF paragraphs 10-11 and

22-23 as an attempt to create the appearance of a genuine dispute. Hospital QDS repeatedly argues that the Court already held that the Appeal Procedure's anti-assignment provision is ambiguous as a matter of law. *See* Doc. 75 at 6, 8. However, the Court's prior ruling held "that the plan language before the Court [was] ambiguous and decline[d] to enforce it on a motion for judgment on the pleadings . . . [s]ince the whole contract [was] not before the Court . . ." Doc. 51 at 6-7.

The Court should disregard Hospital QDS's argumentative responses within BCBSKS's statement of facts.

**B. BCBSKS's Reply to Hospital QDS's Statement of Additional Facts.**

1. Undisputed. BCBSKS refers to the Pretrial Order as an appropriate source. Dkt. No. 68, PTO Stip. 2.a.v, vi, at 2.

2. Controverted. The Court's Memorandum and Order overruling BCBSKS's Motion for Judgment on the Pleadings is not a proper source because the Court relied on a different legal standard. *Compare* Doc. 51 at 2-3 *with* Doc. 74 at 11. BCBSKS also denied Hospital QDS's Amended Complaint paragraph 16. Doc. 19 at ¶ 16 ("BCBSKS denies the allegations in Paragraph 16"). Hospital QDS's reliance on a denied allegation to support an undisputed fact is improper. Moreover, Hospital QDS had direct contacts with Blue Cross Blue Shield Global Core Program ("Global Core") and not BCBSKS. *See* AR044, AR074, AR100-106, AR107-08, ARAR109-110. Global Core is a separate and independent entity and program from BCBSKS. Dkt. No. 68, PTO Stip. 2.a.x at 3.

3. Controverted, in part. BCBSKS did not know that Mr. Rziha completed Hospital QDS's forms on January 14, 2022. Hospital QDS had direct contacts with Global Core. *See* AR044, AR074, AR100-106, AR107-08, ARAR109-110.

4. Undisputed.

5. This is not an additional material fact within the meaning of D. Kan. Rule 56.1(b)(2) because it is a fact "contained in the movant's brief." Hospital QDS cites BCBSKS's summary judgment briefing to support the "additional fact." *See* Doc. 75 at 12, ¶ 5 citing Doc. 74. The paragraph is uncontroverted if the Court treats this paragraph as a genuine additional fact.

6. This is not an additional material fact within the meaning of D. Kan. Rule 56.1(b)(2) because it is a fact "contained in the movant's brief." BCBSKS set forth these facts in its SOF at ¶¶ 37, 41. Doc. 74 at 9. If the Court treats this paragraph as a genuine additional fact, the fact is uncontroverted for the reasons and citations stated in SOF ¶¶ 37, 41 above.

7. This is not an additional material fact within the meaning of D. Kan. Rule 56.1(b)(2) because it is a fact "contained in the movant's brief." BCBSKS set forth these facts in its SOF at ¶¶ 42, 45. Doc. 74 at 9. If the Court treats this paragraph as a genuine additional fact, the fact is uncontroverted for the reasons and citations stated in SOF ¶¶ 42, 45 above.

8. This is not an additional material fact within the meaning of D. Kan. Rule 56.1(b)(2) because it is a fact "contained in the movant's brief." BCBSKS set forth these facts in its SOF at ¶¶ 46, 49. Doc. 74 at 9-10. To the extent the Court nonetheless treats this paragraph as a genuine additional fact, the fact is uncontroverted for the reasons and citations stated in SOF ¶¶ 46, 49 above.

9. This is a restatement of the facts in Hospital QDS's Additional Statement of Facts ¶¶ 6-8 and so BCBSKS incorporates its responses to those paragraphs here.

10. This is not an additional material fact within the meaning of D. Kan. Rule 56.1(b)(2) because it is a fact "contained in the movant's brief." BCBSKS set forth these facts in its SOF at ¶¶ 11-13. Doc. 74 at 4. If the Court treats this paragraph as a genuine additional fact, the fact is uncontroverted for the reasons and citations stated in SOF ¶¶ 11-13 above.

11. This is not an additional material fact within the meaning of D. Kan. Rule 56.1(b)(2) because it is a fact "contained in the movant's brief." BCBSKS set forth these facts in its SOF at ¶ 23. Doc. 74 at 6. If the Court treats this paragraph as a genuine additional fact, the fact is uncontroverted for the reasons and citations stated in SOF ¶ 23 above.

12. This is not an additional material fact within the meaning of D. Kan. Rule 56.1(b)(2) because it is a fact "contained in the movant's brief." BCBSKS set forth these facts in its SOF at ¶¶ 21-22. Doc. 74 at 6. If the Court treats this paragraph as a genuine additional fact, the fact is uncontroverted for the reasons and citations stated in SOF ¶¶ 21-22 above. Hospital QDS also mischaracterizes the Court's Order at Doc. 51.

## III. HOSPITAL QDS LACKS STANDING

### A. Hospital QDS's Assignment Form Does Not Control Assignability.

It is uncontroverted that the Plan does not assign rights and benefits. Hospital QDS, on the one hand, argues that the whole contract controls, but on the other hand, relies on its assignment form ("Assignment Form") to argue for assigned rights and benefits. To advance its arguments, Hospital QDS parses through its Assignment Form to cite language it contends entitles it to rights and benefits. Doc. 74 at 13-14, 19. Hospital QDS makes arguments against the Plan's language, but Hospital QDS's Assignment Form also has the word "right" or "rights" within sentences that do not include "benefit" or "benefits." The Assignment Form, for example, suggests that it "constitutes an express and knowing assignment of [Mrs. Rzihas's] rights in accordance with ERISA Title 29 U.S.C. for breach of fiduciary claims and other legal and/or administrative claims." AR114. Although "benefits" is not included in this sentence, the Assignment Form's intent is clear – Hospital QDS believes the Rzihas assigned their rights and benefits, and Hospital QDS believes it is entitled to all rights and benefits under the Plan.

Contrary to the Hospital QDS's Assignment Form, the Plan repeatedly prevents the assignability of rights and benefits, and includes anti-assignment language stating that:

- "if the provider is a Non-Contracting Provider, Your benefits will be paid directly to You, with such benefits being personal to You and not assignable to any other person or entity." SOF ¶ 10; AR052 (General Information Section of the Plan);

- "Your benefits will be paid directly to You. Such benefits are personal to You and cannot be assigned to any other person or entity." SOF ¶ 11; AR051 (General Information Section of the Plan);

- "In instances where the Insured receives service from a provider that is not contracting with the Blue Cross and/or Blue Shield Company servicing the area in which the provider is located, Your benefits will be paid directly to You, with such benefits being personal to You and not assignable to any other person or entity." SOF ¶ 12; AR052 (General Information Section of the Plan); and

- "an Insured's rights accrued hereunder or under applicable state or federal law (including but not limited to ERISA) are not assignable to any person or entity" SOF ¶ 22.

The Plan's intent is clear when reading the contract as a whole – BCBSKS's insureds cannot assign their rights and benefits to any other person or entity. The Plan prevents the assignability of rights *and* benefits that Hospital QDS's Assignment Form attempts to utilize.

Hospital QDS can point to no provision within the Plan that expressly or implicitly allows for the assignability of rights and benefits to Hospital QDS, or to any other person or entity. Hospital QDS cites no legal authority supporting that a provider's form trumps a plan or a plan's anti-assignment language. When a provider's form conflicts with a plan, the plan controls, as supported in every case cited by BCBSKS in its summary judgment motion. Doc. 74 at 11-14.

So, where Hospital QDS's Assignment Form assigns to Hospital QDS "[Mrs. Rzihas's] rights in accordance with ERISA Title 29 U.S.C. for breach of fiduciary claims and other legal and/or administrative claims," and where the Plan states that rights accrued "under applicable state

or federal law (including but not limited to ERISA) are not assignable to any person or entity," the Plan controls, and not the Assignment Form.

### B. The Plan is Not Ambiguous.

The Plan is a contract between the Rzihas and BCBSKS. The Tenth Circuit has confirmed that courts should "first look at the plain language [of the contract] to determine the parties' meaning and intent" and when "the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 993 F.3d 1212, 1235 (10th Cir. 2021). Further, insurance plans should be interpreted using "universally recognized canons of contract interpretation to the plain wording of the . . . anti-assignment clause." *Weiner v. Blue Cross & Blue Shield of Louisiana*, No. 3:17-CV-949-BN, 2018 WL 3956431, *4 (N.D. Tex. Aug. 17, 2018).

The Plan repeatedly includes anti-assignment language with the clear intent of ensuring its members know that they cannot assign their rights to another person or entity. Hospital QDS's argument that the "rights" are unclear, or that other words could modify various sentences, is an attempt to create conflict where none exists. When this Plan is read in its entirety, there is no ambiguity in BCBSKS's intent: the rights and benefits in the Plan cannot be assigned from a beneficiary to anyone or anything else. The Plan's repetition strengthens the certainty of BCBSKS's intent.

Hospital QDS cannot establish standing with the weight of the Plan's language and the legal authority cited within BCBSKS's summary judgment motion, which Hospital QDS did not cite or attempt to distinguish.

### C. Hospital QDS's Status as an Authorized Representative Does Not Create Derivative Standing.

Hospital QDS argues, without any legal support, that it has derivative standing as an assignee through its written Assignment Form because BCBSKS considered and decided appeals on the merits. Doc. 75 at 15, 20. There is no dispute that Hospital QDS was an Authorized Representative to act on the Rzihas's behalf during the appeals process, and the Plan states that "Authorized Representatives may be designated as provided in section A [of the Appeal Procedures]. AR048; *see also* Doc. 74 at 10, ¶ 50 (recognizing Hospital QDS as an "authorized rep."); Doc. 75 at 10, ¶ 50 (undisputed).

However, being an authorized representative does not mean derivative standing. *Abira Med. Lab'ys, LLC v. Caprock Health Plans*, No. CV 23-04252 (GC) (JTQ), 2024 WL 4345405, at *5 (D.N.J. Sept. 30, 2024) (holding that the "[p]laintiff's alleged status as an 'authorized representative' does not confer derivative standing to sue in federal court."); *Atl. Neurosurgical Specialists, PA on behalf of Patient DC v. Anthem Blue Cross & Blue Shield,* No. CV 20-10415, 2021 WL 4148149, at *3, fn. 5 (D.N.J. Sept. 10, 2021) (finding that the plaintiff lacked derivative standing due to a plan's anti-assignment clause even though the plaintiff claimed to be an "authorized representative"); *Mem'l Hermann Health Sys. v. Pennwell Corp. Med. & Vision Plan & Pennwell Corp*., No. CV H-17-2364, 2017 WL 6561165, at *10 (S.D. Tex. Dec. 22, 2017) (rejecting argument that a provider has standing to sue under ERISA merely when it has authorized representative status) (collecting authority).

Hospital QDS cites no authority supporting that its status as an Authorized Representative grants it derivative standing. The Court should reject Hospital QDS's arguments like other federal courts have rejected similar arguments from other providers.

### D. Hospital QDS's Estoppel Arguments Do Not Defeat Its Lack of Standing.

It is telling that the Court's Memorandum and Order, which Hospital QDS relies heavily on, does not address its equitable arguments. Doc. 51. This is likely because Hospital QDS cited unpersuasive and inapplicable legal authority to support its arguments. Hospital QDS continues to cite *Hermann Hosp. v. MEBA Med. & Benefits Plan,* 959 F.2d 569 (5th Cir. 1992), which still does not apply. In *Hermann*, the provider and insurer "maintained continuous communication[s]" while the insured was in the hospital, and the provider and insurer engaged in payment communications during that time. 959 F.2d at 574. The insurer's form stated that "[b]enefits payable may be assigned" provided that proper authorization is completed in Part IV of the insurer's form. *Id*. at 572. Therefore, when the member completed Part IV of insurer's form that stated, "I hereby authorize payment of medical benefits directly to the provider of services indicated," the assignment was put into effect and enforceable. *Id.* The issue in *Hermann* also pertained to nonpayment by the insurer, who paid nothing to the provider as provided and allowed for under the plan and executed documents. *Id.*

There were no such communications between BCBSKS and Hospital QDS – Hospital QDS communicated with Global Core, a separate and independent entity, as required under the Plan. Moreover, unlike the provider in *Hermann* who paid the provider nothing, BCBSKS paid Hospital QDS as required and allowed under the Plan. BCBSKS and the Plan have no separate forms addressing the assignability of rights and benefits for providers and insurers to sign. Although the Plan allows BCBSKS to pay Hospital QDS directly, that is not an assignment of rights. *See* Doc. 74 at 18 (citing cases supporting that direct payments neither create standing nor invalidate anti-assignment provisions when allowed under the plan). *Hermann* does not apply to this case.

Hospital QDS also cites *Angelina Emergency Med. Assocs. PA v. Blue Cross & Blue Shield of Alabama* 156 F.4th 505 (5th Cir. 2025) to support its estoppel argument, but *Angelina* is also distinguishable for several reasons. First, the providers in *Angelina* were "fifty-six Texas emergency-medicine physician groups" who processed domestic claims. *Id.* at 511. Hospital QDS is a Mexican-based provider that submitted international claims for processing. Second, the providers submitted claims directly to the in-state "host" Blue Cross and Blue Shield plan, which then passed the claimed to the relevant out of state Blue Cross and Blue Shield for adjudication, and then the host plan received the claim back for processing and payment. *Id.* at 512. Hospital QDS submitted claims to Global Core as a wholly separate and independent entity, and the claims were processed through the Global Core Program and submitted to BCBSKS for payment. PTO Stip. 2.a.x, at 3; AR044. Third, the Blue Plans in *Angelina* "engage[d] in partial payment **and discussion with the Groups – just as in *Hermann***." *Id.* at 520 (emphasis added). Critically, BCBSKS did not engage in discussions like the insurers in *Hermann* and *Angelina.* Fourth, *Angelina* "recognized that *Hermann*'s estoppel was based on three years of 'postponed payments,' which is not the case here as discussed above. *Id.* at 519.

BCBSKS neither had discussions with Hospital QDS, nor had knowledge of Hospital QDS's forms until the appeals process. BCBSKS, having no direct contact with Hospital QDS throughout the claims period, could not have known Hospital QDS was unaware of the Plan's anti-assignment provisions. Moreover, the administrative record does not support that Hospital QDS "requested the underlying plan documents" as the provider in *Angelina* did, and there is nothing in the administrative record showing that BCBSKS refused to provide the Plan to Hospital QDS. 156 F.4th at 520.

Indeed, assuming Hospital QDS were a participant or beneficiary, it made no written request for the Plan. *See* 29 U.S.C. § 1024(b)(4) (stating that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description . . . or other instruments under which the plan is established or operated"). Although "ERISA participants may make written requests to administrators for information through agents or representatives," Hospital QDS still did not request the Plan. *See Giordano v. Thomson*, No. 03-CV-5672 JS AKT, 2007 WL 1580081, at *5 (E.D.N.Y. May 29, 2007), aff'd, 564 F.3d 163 (2d Cir. 2009). BCBSKS had no obligation to provide Hospital QDS with the Plan, including language regarding the Plan's anti-assignment provisions, considering Hospital QDS made no such request.

Hospital QDS claims prejudice, but it has not been prejudiced because its Assignment Form, a contract between Hospital QDS and the Rzihas, allowed Hospital QDS to sue the Rzihas for any outstanding balance. Contrary to Hospital QDS's argument that it did not have the opportunity to evaluate all rights through BCBSKS's apparent representations (Doc. 75 at 24), Hospital QDS, through its billing administrator, served the Rzihas with a ***prelitigation*** debt collection letter, then Hospital QDS amended its complaint to add the Rzihas as defendants, and finally it settled its claims with the Rzihas during this litigation. The undisputed facts are not applicable to *Hermann* or to any other case cited by the parties. For these reasons, the Court should reject Hospital QDS's estoppel arguments.

### E. Hospital QDS's Waiver Arguments Do Not Defeat Lack of Standing.

Hospital QDS's waiver arguments rely on *Beverly Oaks* and *Spinedex*, but those cases also cut against its arguments. *Beverly Oaks Physicians' Surgical Ctr., LLC v. Blue Cross & Blue Shield of Ill.*, defines waiver as the "*intentional* relinquishment of a known right." 983 F.3d 435, 440 (9th

Cir. 2020) (emphasis added). In *Beverly Oaks,* the plaintiff provider had pre-service conversations with the insurer, which included discussions "that benefits were paid on an out-of-network basis at a 'typical' rate of 50% to 100% of the claim and provided additional information such as the deductible amount and the patient's account type," and the provider submitted claims directly to the insurer. 983 F.3d at 438. *Beverly Oaks* does not apply because BCBSKS had no pre-service discussions with Hospital QDS regarding rates, Hospital QDS did not submit claims directly to BCBSKS, and Hospital QDS sent the Assignment Form to BCBSKS during the appeals process. AR436-45.

*CSMN Operations LLC v. Aetna Life Ins. Co.* distinguishes *Beverly Oaks* because the defendant insurer did not have notice of the assignment until after it had already processed claims and had either denied or taken no action on the appeals. No. 24-CV-00368-NYW-RTG, 2025 WL 2513588, at *9 (D. Colo. Sept. 2, 2025). *CSMN* supports that BCBSKS's processing and payment of claims before or during the appeals process does not constitute waiver. *Id.* at *9 (citing *Podiatric OR of Midtown Manhattan, P.C. v. UnitedHealth Grp., Inc.*, No. 15-cv-03234-DSD-HB, 2016 WL 126362, at *3 (D. Minn. Jan. 11, 2016) (holding that plan administrator's "routine conduct with providers such as remitting payment and sending correspondence" does not amount to waiver).

*Beverly Oaks* further contradicts Hospital QDS's position through the case's reliance on Ninth Circuit authority that found a different "[provider's] waiver argument failed [where] the [d]efendants raised the anti-assignment provision after the suit commenced to contest [the plaintiff]'s standing to sue, *not as a reason to deny benefits*." *Beverly Oaks*, 983 F.3d at 441 (citing *Eden Surgical Ctr. v. Cognizant Tech. Sols. Corp.*, 720 F. App'x 862, 863 (9th Cir. 2018) (emphasis added). *Eden Surgical* applies to BCBSKS's reliance on the Plan's anti-assignment provisions – BCBSKS does not rely on the anti-assignment provisions to deny or to refuse benefits

to Hospital QDS or even to the Rzihas. Instead, BCBSKS relies on the anti-assignment provisions to argue that Hospital QDS lacks standing to sue BCBSKS in federal court.

Hospital QDS's reliance on *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.* also advances BCBSKS's waiver arguments. In *Spinedex*, the claims administrator sent EOB to beneficiaries "stating 'PAYMENT ASSIGNED TO PROVIDER.'" 770 F.3d 1282, 1296 (9th Cir. 2014) (emphasis in original). The Ninth Circuit construed the statement as an exercise of the administrator's discretionary authority because under the plan's explicit terms, the administrator "had the discretionary authority only to send payments directly to non-network providers." *Id.* The Ninth Circuit held that the administrator did not waive its anti-assignment provision because as far as the administrator knew, the provider "was acting merely as an authorized representative charged with filing, collecting, or appealing a claim on behalf of the patient." *Id*. at 1297.

BCBSKS also had every reason to rely on the Plan to determine that Hospital QDS was an Authorized Representative tasked with filing, collecting, or appealing claims on behalf of their patient. BCSBKS recognized Hospital QDS as an authorized representative during the appeals process, which is undisputed. Doc. 74 at 10, ¶ 50 (recognizing Hospital QDS as an "authorized rep."); Doc. 75 at 10, ¶ 50 (undisputed). The undisputed facts support that BCBSKS was not required to inform a non-contracting provider of an anti-assignment clause before litigation. *See Brand Tarzana Surgical Inst., Inc. v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan*, 706 F. App'x 442 (9th Cir. 2017) (affirming summary judgment to the plan and recognizing that the anti-assignment's benefit clause granted no rights because the clause was "a litigation defense, not a substantive basis for claim denial," and that "the Plan did not waive the provision through its course of dealing with [provider]" where there was "no evidence that the

Plan or its vendors took action inconsistent with the anti-assignment provision or that they were aware, or should have been aware, that [provider] was acting as an assignee."). BCBSKS did not waive the Plan because it relied on the Plan to process and pay claims.

Hospital QDS lacks standing to sue BCBSKS in federal court under the Plan and established law. If the Court agrees, BCBSKS is entitled to summary judgment as a matter of law on Hospital QDS's ERISA claim.

## IV. BCBSKS'S DECISIONS WERE NOT ARBITRARY OR CAPRICIOUS

BCBSKS also remains entitled to summary judgment regarding its exclusive discretion under the Plan. Hospital QDS relies heavily on *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.* to assert that BCBSKS's decisions were not from a "reasoned and principled process" and inconsistent with the purposes of the Plan. *See* Doc. 75 at 28-32. But the arbitrary and capricious analysis in *Flinders* pertained to the reasonableness of the plan's interpretation of an eligibility provision and whether that interpretation was ambiguous, which the court determined was unambiguous. 491 F.3d 1180, 1193-94 (10th Cir. 2007). However, the "articulated rationale for denying coverage" was "unreasonable because it conflict[ed] with the unambiguous language of the catch-all provision and the express statement that the example benefits listed are illustrative rather than exclusive." *Id.* at 1194.

The facts in *Flinders* are distinctly different and inapplicable to the undisputed facts here. Hospital QDS is a non-contracting provider, and when the Plan is read as whole, particularly the section regarding Allowable Charges to Non-Contracting Providers (AR041-AR042), BCBSKS exercised discretion to pay claims under the Plan. Unlike the company's rationale in *Flinders* that conflicted with the Plan, BCBSKS relied on the Plan's language to process and pay claims. Hospital QDS does not cite any portion of the Plan or any case or facts showing that BCBSKS's

decisions lacked "any reasonable basis" through its reliance on the Plan, which is required to reverse an administrator's decision. *Geddes v. United Staffing All. Emp. Med. Plan*, 469 F.3d 919, 929 (10th Cir. 2006). Hospital QDS provides no record evidence showing that BCBSKS misapplied the Plan, which requires BCBSKS to consider its cost-containment policies. Hospital QDS complains about the payment it received under the Plan, which is not enough to overcome the arbitrary and capricious standard, considering that Hospital QDS's demand for 100% of all billed charges is inconsistent with the Plan. Hospital QDS must have more than a recitation of facts and generalized dislike of the outcome to overcome the Plan. *Nance v. Sun Life Assur. Co. of Canada*, 294 F.3d 1263, 1269 (10th Cir. 2002).

## V. CONCLUSION

For all the reasons stated above, Defendant Blue Cross and Blue Shield of Kansas, Inc. requests that the Court grant its Motion for Summary Judgment and prays for all other and further relief as the Court deems just and proper.

Dated: September 25, 2026.

Respectfully Submitted,

SPENCER FANE LLP

/s/ Olawale O. Akinmoladun

Douglas M. Weems KS #14771
Olawale O. Akinmoladun KS #25151
1000 Walnut Street, Suite 1400
Kansas City, MO 64106-2140
Phone: (816) 474-8100
Fax: (816) 474-3216
dweems@spencerfane.com
wakinmoladun@spencerfane.com

AND

Alexis H. Denny KS # 29752
6201 College Boulevard, Suite 500
Overland Park, KS 66211-2435
Phone: (913) 345-8100
Fax: (913) 345-0736
adenny@spencerfane.com
**ATTORNEYS FOR DEFENDANT BLUE CROSS AND BLUE SHIELD OF KANSAS, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 25th day of September, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service.

/s/ Olawale O. Akinmoladun
An Attorney for Defendant
Blue Cross and Blue Shield of Kansas, Inc.